2003 ME 95
**STATE of Maine**
v.
**Larry BURBY.**

Supreme Judicial Court of Maine.

Submitted On Briefs: June 26, 2003.
Decided: July 24, 2003.

Neale T. Adams, District Attorney, Carrie L. Linthicum, Asst. D. A., Presque Isle, for State.

Alan D. Harding, Luke M. Rossignol, Hardings Law Offices, Presque Isle, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Larry Burby appeals from a judgment entered in the Superior Court (Aroostook County, *Hunter, J.*) finding him guilty of operating after suspension, 29–A M.R.S.A. § 2412–A(1) (1996 & Supp.

2002). Burby contends that (1) the court erred in finding that the area in which he was operating his vehicle is a "parking area" as defined by 29–A M.R.S.A. § 101(51) (1996); and (2) the statutory definition of "parking area" is unconstitutionally vague. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] At 9:15 p.m. on August 4, 2001, Burby was arrested after an officer observed him squealing tires while driving his motor vehicle on a paved roadway that extends around the perimeter of the racetrack at the Northern Maine Fairgrounds. At his jury-waived trial, Burby stipulated that he had been operating his vehicle after he had received notice that his license had been suspended. While the fairgrounds are privately owned, the public is invited to attend the fair when it is in session, as well as the forum when the fair is not in session. The forum includes an indoor swimming pool, an ice-skating rink, and space for concerts and trade shows. Because the perimeter roadway connects with a variety of fairground roads, the public uses the perimeter roadway to access activities and events in the fairgrounds.

[¶ 3] The court adjudged Burby guilty and sentenced him to seven days in jail, suspended his license for a period of one year, and imposed a fine of $580. Burby appealed.

## II. DISCUSSION

[¶ 4] Statutory construction is a question of law and thus is reviewed de novo. *State v. McLaughlin*, 2002 ME 55, ¶ 5, 794 A.2d 69, 72. We take into consideration "the whole statutory scheme for which the section at issue forms a part so that a harmonious result; presumably the intent of the Legislature, may be achieved." *State v. White*, 2001 ME 65, ¶ 4, 769 A.2d 827, 828–29 (quotation marks and citation omitted).

[¶ 5] A person whose license has been suspended is prohibited from operating a motor vehicle "on a public way or in a parking area" by 29–A M.R.S.A. § 2412–A(1).[1] A "parking area" is defined as "an area designed for use as access or parking for patrons and customers of establishments to which the public is invited." 29–A M.R.S.A. § 101(51). The Superior Court construed the section 101(51) definition as embodying two types of "areas": "an area designed for use by patrons and customers seeking to gain access to establishments to which the public is invited" and "an area designed for motor vehicle parking for patrons and customers of establishments to which the public is invited." The court concluded that this construction of section 101(51) "is consistent with the legislative purpose underlying 29–

---

1. Section 2412–A(1) in its entirety reads:
   1. Offense; penalty. A person commits a Class E offense if that person operates a motor vehicle on a public way or in a parking area when that person's license has been suspended or revoked, and that person:
   A. Has received written notice of a suspension or revocation from the Secretary of State or a court;
   B. Has been orally informed of the suspension or revocation by a law enforcement officer or a court;
   C. Has actual knowledge of the suspension or revocation;
   D. Has been sent written notice in accordance with section 2482 or former Title 29, section 2241, subsection 4; or
   E. Has failed to answer, pay a fine or appear in court pursuant to a notice or order specified in section 2605 or 2608. 29–A M.R.S.A. § 2412–A(1) (1996 & Supp. 2002).

A M.R.S.A. § 2412–A [which] was, at least in part, to minimize the exposure of the public to the risks presented by problem drivers on public roads and in other areas, such as access areas, where the general public would be expected to travel in their own motor vehicles."

[¶ 6] The Superior Court's construction of these statutory provisions is consistent with their plain meaning, and gives effect to the public policy, apparent in these provisions, that an individual whose right to operate a motor vehicle has been suspended or revoked should not operate on a public way or in a private area to which the general public is invited. *See White*, 2001 ME 65, ¶ 4, 769 A.2d at 828 (stating that criminal statutes are strictly construed so as to give effect to the Legislature's intent and the statute's plain meaning, and to avoid "absurd, illogical, or inconsistent results"). Because the perimeter roadway upon which Burby operated his vehicle was designed for use [2] and is used by patrons and customers to access the fair, an indoor swimming pool, an ice-skating rink, and other activities and events to which the public is invited, the court correctly determined that Burby, as an operator whose license had been suspended or revoked, was prohibited from operating on the perimeter roadway.

[¶ 7] Burby also contends that the definition of a "parking area" in section 101(51), read in the context of section 2412–A, is unconstitutionally vague because it subjects individuals operating on a private way to prosecution for having oper-

ated in a "parking area." "A statute will be invalidated for vagueness when it fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *McLaughlin*, 2002 ME 55, ¶ 9, 794 A.2d at 72 (internal quotation marks and citations omitted).

[¶ 8] Section 101(51) is not vague. The definition of "parking area" is easily distinguishable from the separate definition of "private way." A "private way" is "a way privately owned and maintained over which the owner may restrict use or passage and includes a discontinued way even if a public recreation easement has been reserved." 29–A M.R.S.A. § 101(58) (1996). A "parking area" contains the elements of "patrons and customers" and "of establishments to which the public is invited," but "private way" does not. Thus, as defined, a "parking area" must be associated with an establishment accessed by patrons and customers. Ordinary people can understand that if their license is suspended or revoked, section 2412–A prohibits them from driving on privately owned areas which are designed for use as access for patrons and customers of establishments to which the public is invited.

The entry is:

Judgment affirmed.

---

2. The aerial photograph of the fairgrounds in evidence and the circumstances of the case demonstrate the purpose of the roadway. The aerial photograph shows the perimeter roadway connecting with numerous access-ways to various buildings and plots of land. Thus, the court could easily infer that the perimeter roadway was designed to provide access for patrons and customers to the vari-ous buildings and activities on the fairgrounds. *See Parent v. U.S. Fid. & Guar. Co.*, 233 A.2d 435, 436–37 (Me.1967) (involving the application of an insurance policy's language—"a farm type tractor or other equipment designed for use principally off public roads"—based upon a photograph of the vehicle at issue and the circumstances of the case).