MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 73
Docket:      Pen-15-228
Submitted
 On Briefs: April 21, 2016
Decided:     May 17, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and <u>HUMPHREY</u>, JJ.

## STATE OF MAINE

v.

## TRACY DORWEILER

HUMPHREY, J.

[¶1]   Tracy Dorweiler appeals from a judgment of conviction for escape from arrest (Class D), 17-A M.R.S. § 755(1-D)(A) (2015), entered in the Unified Criminal Docket (Penobscot County, *R. Murray, J.*) following a bench trial.  She contends that her conviction cannot stand because there was insufficient evidence that she was arrested before she fled the custody of a police officer by climbing out a bedroom window.  Concluding that there was sufficient evidence to support the conviction, we affirm.

## I.  BACKGROUND

[¶2]   Viewed in the light most favorable to the State, the record establishes the following facts.  *See State v. Cote*, 2015 ME 78, ¶ 2, 118 A.3d 805.  On May 5, 2014, around 11:30 p.m., an officer with the Bangor Police Department

went to the home of Dorweiler's boyfriend to arrest Dorweiler on an outstanding warrant. After the boyfriend opened the door, Dorweiler appeared in the doorway. The officer told her that he had a warrant for her arrest, and she "advised [him] she was aware." At that point, the officer told Dorweiler that she was under arrest. The officer then asked Dorweiler "if there was anything she would like to take with her to the jail," and she told him "that she wanted to put on a bra." The officer and Dorweiler walked through the living room and the kitchen to the doorway of the bedroom. They "discussed some paperwork she had," and Dorweiler asked the officer "what was going to happen." The officer responded that they "were going to go down to the [Penobscot County Jail]."

[¶3] Dorweiler went into the bedroom and closed the door behind her. After some time, the officer could not hear any noise coming from the bedroom, so he opened the door and discovered that the bedroom window was open and Dorweiler was gone. The officer learned from Dorweiler after she was apprehended that she had exited through the bedroom window, gone to a friend's house, called her father, and had him drive her to Madawaska.

[¶4] Dorweiler was charged by criminal complaint with escape from arrest on July 15, 2014. She pleaded not guilty at her arraignment and waived her right to a jury trial. A bench trial was held on April 17, 2015. The officer and Dorweiler's boyfriend were the only witnesses who testified.

[¶5]   At the close of trial, the parties disputed whether the evidence was sufficient to show that the officer had actually arrested Dorweiler before she fled. The court described the four elements of an arrest as (1) an intention on the part of the arresting officer to make an arrest; (2) a communication of that intent to the one whose arrest is sought; (3) an understanding of the officer's intention by the person who is to be arrested; and (4) the actual or constructive seizure or detention of the person to be arrested by the one having the present power to control that person. The court stated that "the first three elements . . . have been clearly established beyond a reasonable doubt."  As to the fourth element, the court noted that "there is no evidence with regard to a physical seizure [of Dorweiler by the officer], so the focus is on whether or not there's been proof by the State of . . . constructive seizure."  The court found that there was a constructive seizure because Dorweiler had submitted to the officer's power and authority when the officer asked her if she wanted to bring anything to jail and she responded that she wanted to put on a bra. The court therefore adjudged Dorweiler guilty and sentenced her to fourteen days in jail.  Dorweiler timely appealed to us.

## II.  DISCUSSION

[¶6]   Dorweiler contends there was insufficient evidence that she committed the crime of escape from arrest because the State did not prove beyond a reasonable doubt that she was "arrested" before she fled out the bedroom window.

4

When a defendant challenges the sufficiency of the evidence supporting a conviction, we determine, viewing the evidence in the light most favorable to the State, "whether a trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Saucier*, 2015 ME 144, ¶ 6, 126 A.3d 1159 (quotation marks omitted).

[¶7]   The offense of escape from arrest occurs when a person "without official permission . . . intentionally . . . [l]eaves following arrest prior to being transported." 17-A M.R.S. § 755(1-D)(A).   Thus, the State had to prove that Dorweiler had been arrested before she fled.  We have established that there are four elements to a valid arrest[1] for the purposes of the offense of escape from arrest:

> (1) an intention on the part of the arresting officer then and there to make the arrest under a real or pretended authority; (2) a communication of that intention by the arresting officer to the one whose arrest is sought; (3) an understanding of that intention by the person who is to be arrested; and (4) *the actual or constructive seizure or detention of the person to be arrested by the one having the present power to control him.*

*State v. Donahue*, 420 A.2d 936, 937 (Me. 1980) (emphasis added) (quotation marks omitted).  A constructive seizure occurs when "the person to be arrested is in the presence and power of the officer and in consequence of the

---

[1]  It is a defense to escape from arrest that the arresting officer acted unlawfully in making the arrest, 17-A M.R.S. § 755(2) (2015), but Dorweiler is not contending that this officer acted unlawfully.

communication" by the officer that the person is under arrest, "submits to the officer's restraint." *State v. Powers*, 386 A.2d 721, 728 (Me. 1978). Dorweiler contends that the court erred by finding that the officer constructively seized her before she fled because she did not submit to the officer's restraint.

[¶8] On this record, we conclude that the trier of fact rationally could have found beyond a reasonable doubt that Dorweiler had submitted to arrest: Dorweiler acknowledged that the officer was there on a warrant for her arrest, heard the officer's statement that she was under arrest, and said that she wanted to put on an item of clothing in response to the officer asking her if there was anything she would like to take with her to jail. Based on Dorweiler's show of submission, the officer "asserted as much control over [Dorweiler] as the situation reasonably permitted or necessitated," *Donahue*, 420 A.2d at 937, and did not need to accompany Dorweiler into the bedroom while she changed in order to effect the arrest.

[¶9] We are not persuaded by Dorweiler's argument that the court could not have found that she had submitted because she did not *subjectively intend* to submit and instead "manipulated" the officer in order to carry out her flight.[2] To

---

[2] Dorweiler suggests that she committed, at most, the offense of refusing to submit to arrest, 17-A M.R.S. § 751-B (2015), because the officer did not effect an arrest. That statute provides that a person is guilty of the offense of refusing to submit to arrest "if, with the intent to hinder, delay or prevent a law enforcement officer from effecting the arrest" the person "[r]efuses to stop on request or signal of a law enforcement officer," uses physical force against the officer, or creates a substantial risk of bodily

6

accept Dorweiler's argument that her subjective intent controls the determination of whether she submitted to arrest would add a factor to the arrest analysis not previously considered by us or required by the escape statute and could lead to increased use of physical force by law enforcement to arrest defendants no matter their demonstrations of acquiescence.[3]

[¶10] We conclude that Dorweiler committed the crime of escape from arrest because there was sufficient evidence to prove that she was under arrest before she fled out the bedroom window of her boyfriend's home. We therefore affirm the judgment.

The entry is:

Judgment affirmed.

_____

injury to the officer. 17-A M.R.S. § 751-B(1). None of these scenarios fits the facts of this case; refusal to stop on request is most clearly applicable to a police chase or situations in which a person drives away from a vehicle stop. *See State v. LaPlante*, 2011 ME 85, ¶ 20 n.5, 26 A.3d 337.

[3] While we do not now express any opinion on post–arrest procedures or tactics, we observe that, although Dorweiler proved unworthy of the gesture, the arresting officer showed understandable restraint and tact by giving her the opportunity to put on an item of clothing before taking her to jail.

**On the briefs:**

Jamesa J. Drake, Esq., Drake Law, LLC, Auburn, for appellant Tracy Dorweiler

R. Christopher Almy, District Attorney, and Susan J. Pope, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2014-2568
FOR CLERK REFERENCE ONLY