MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 147
Docket:      Cum-15-304
Argued:      June 8, 2016
Decided:     October 4, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

JOHN KENDALL

HJELM, J.

[¶1]   John Kendall appeals from a judgment of conviction for three counts of theft by misapplication of property (Class B), 17-A M.R.S. § 358(B)(4) (2015); one count of conspiracy to commit intentional evasion of tax (Class D), 17-A M.R.S. § 151(1)(D) (2015) and 36 M.R.S. § 184-A(2) (2015); and three counts of failure to collect, account for, or pay over withholding tax (Class D), 36 M.R.S. § 184 (2015), entered in the Unified Criminal Docket (Cumberland County, *Warren, J.*) after a jury trial.  Kendall contends that on the charges of theft by misapplication and failing to collect, account for, or pay over withholding taxes, the evidence is insufficient to support the convictions and the court instructed the jury incorrectly; and that the court abused its discretion by admitting evidence of country club memberships purchased by a

2

company he owned and used exclusively by his wife and him.[1]  We affirm the judgment.

## I.  BACKGROUND

[¶2]  When the evidence is viewed in the light most favorable to the State, the jury was entitled to find the following facts beyond a reasonable doubt.  *See State v. Dorweiler*, 2016 ME 73, ¶ 2, --- A.3d ---.

[¶3]  Kendall was the president and owner of Chipco International, Inc., a poker chip manufacturing business, from 1987 to 2013.  In those capacities, Kendall oversaw and was integrally involved in Chipco's business operations, including payroll; controlling and managing Chipco's finances, including the business's taxes; and communicating and negotiating with the Maine Revenue Services (MRS).  Under Maine law, Chipco was required to withhold income tax from employee wages and, on a quarterly basis, pay over those withholdings to the State Tax Assessor.  Kendall signed Chipco's employee withholding tax returns when they were filed with the State, and he directed another member of Chipco's management team to file the returns without submitting the required payment.  On multiple occasions from 2007 to 2012,

---

[1]  Kendall also argues that the evidence was insufficient to support the jury's guilty verdict on the charge of conspiracy to commit tax evasion.  That argument is unpersuasive, *see State v. Dorweiler*, 2016 ME 73, ¶ 6, --- A.3d --- (stating the standard of review when the sufficiency of the evidence is challenged), and we do not address it further.

Chipco failed to pay the Assessor required withholding taxes totaling more than $150,000 as those payments became due.[2]

[¶4]   During that period, Kendall directed Chipco employees to pay some of Chipco's business expenses with the employee tax withholdings.  He also directed that Chipco money be used to pay for some of his personal expenses such as mortgage payments and legal fees arising from a personal bankruptcy proceeding.  Further, at Kendall's direction, Chipco purchased corporate country club memberships used only by Kendall and his wife.

[¶5]   In 2009, Kendall instructed members of Chipco's management team to apply for unemployment compensation benefits.  Four of those employees—all of whom later pleaded guilty to charges of theft by deception and tax evasion—received unemployment benefits while continuing to work for Chipco.  Kendall directed Chipco's finance manager to pay those employees "off the books," meaning that Chipco did not identify them as employees and did not turn over withholding taxes for them to the State Tax Assessor, even though they continued to work for Chipco, which paid them the same net amount they earned previously.  Kendall also attempted to evade the MRS's collection efforts by withdrawing funds immediately after they were

---

[2]  A portion of that arrearage was paid later as a result of the MRS's collection efforts, leaving approximately $51,000 due as of the date Kendall was sentenced.

deposited into Chipco's accounts, and by transferring Chipco funds into bank accounts owned by another Chipco employee, by his wife, and by other corporations.

[¶6]  Because of Chipco's failure to pay over its employee withholding taxes, Kendall received many communications from the MRS.  On behalf of Chipco, he was in regular contact with the MRS for roughly five years, never challenged the MRS's tax assessments, and entered into payment plans, which Chipco did not fulfill.  As he directed the use of withholding funds for other business obligations and the use of corporate money for his own expenses, he advised the MRS that Chipco did not have enough money to pay the overdue withholding amounts but promised to satisfy the debt as soon as possible.

[¶7]  In August 2013, Kendall was indicted for three counts of theft by misapplication of property (Class B), 17-A M.R.S. § 358(B)(4) (Counts 1-3); one count of conspiracy to commit intentional evasion of tax (Class D), 17-A M.R.S. § 151(1)(D) and 36 M.R.S. § 184-A(2) (Count 4); three counts of failure to collect, account for, or pay over withholding tax (Class D), 36 M.R.S. § 184 (Counts 5-7); and one count of making and subscribing a false statement in a Maine income tax return (Class D), 36 M.R.S. § 5333 (2015) (Count 8).  He entered pleas of not guilty.

[¶8]  The court held a seven-day jury trial in March 2015.  In a motion in limine, Kendall requested that the court exclude evidence about the country club memberships that Chipco paid for and that he and his wife used exclusively, arguing that evidence of affluence was unfairly prejudicial. *See* M.R. Evid. 403.  The court denied the motion and ruled that, subject to limitations, the State could present such evidence.

[¶9]  The jury returned guilty verdicts on all counts.  Having moved unsuccessfully at trial for a judgment of acquittal, Kendall filed a renewed, post-trial motion for a judgment of acquittal.  The court denied the motion as to Counts 1-7, but granted it as to Count 8.  The court then imposed the following concurrent sentences: on the three charges of theft by misapplication, forty-two months to the Department of Corrections, all but ten months suspended, three years of probation, and restitution of $51,663 payable to the MRS;[3] on the charge of conspiracy to commit tax evasion, six months of incarceration; and on the three charges of failure to collect, truthfully account, and pay over tax, three months of incarceration.  Kendall's appeal followed.

---

[3]  This was the amount that remained due to the State Tax Assessor after a portion of the withholding taxes that were the subject of this prosecution was paid.

## II. DISCUSSION

[¶10]  Kendall challenges the convictions for theft by misapplication of property (Counts 1-3), asserting that 17-A M.R.S. § 358(1)(A) (2015) does not apply to the failure to pay over employee withholding taxes to the State Tax Assessor.  Kendall next argues that he cannot properly be convicted for failing to collect, truthfully account for, and pay over withholding taxes pursuant to 36 M.R.S. § 184 because he was not subject to a statutory duty to do so.[4] Finally, Kendall contends that the court erred by admitting certain "lifestyle" evidence over his objection.  We consider these arguments in turn.

A.    17-A M.R.S. § 358(1)(A): Theft by Misapplication

[¶11]  Kendall contends that the crime of theft by misapplication does not encompass his alleged conduct because the withholding taxes were not payable to a "3rd person" as section 358(1)(A) provides, and therefore the convictions for Counts 1-3 are erroneous.

[¶12]  Although Kendall frames this contention in several ways, including challenges to the court's "jurisdiction" and the adequacy of the indictment, it is essentially an argument that the evidence is insufficient to

---

[4]  Kendall also argues that for the same reasons that his alleged conduct is not encompassed within 17-A M.R.S. § 358 (2015) and 36 M.R.S. § 184, the court's jury instructions on those charges were erroneous.  Because we conclude that those statutes apply to Kendall's actions, the court's instructions to the jury were not erroneous, and we do not separately address his arguments as framed in terms of the instructions.

support the guilty verdicts on Counts 1-3. Kendall did not make this argument below,[5] but we nonetheless consider his contention under the standard of review applicable to preserved error. *See State v. Van Sickle*, 434 A.2d 31, 34-35 (Me. 1981). As we have explained, even where an accused fails to move for entry of judgment of acquittal based on insufficiency of the evidence, the trial court has an independent duty pursuant to M.R.U. Crim. P. 29(a) to assess the sufficiency of the evidence at the close of both the State's case-in-chief and the accused's case.[6] *Id.* at 34. Therefore, the sufficiency of the evidence to support a guilty verdict is before the court, irrespective of whether the defendant articulates it. We thus address Kendall's argument rooted in the sufficiency of the evidence under the familiar standard of "whether a trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *Dorweiler*, 2016 ME 73, ¶ 6, --- A.3d --- (quotation marks omitted).

---

[5] Although Kendall did argue at trial that the legal obligation to pay the taxes was Chipco's and not his, and for that reason he could not be found guilty of theft under section 358, he does not advance this argument on appeal but rather pursues the different argument addressed in the text.

[6] In pertinent part, M.R.U. Crim. P. 29(a) provides,

> The court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more crimes charged in the indictment, information, or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such crime or crimes.

8

[¶13]   We reiterate, however, that the level of appellate scrutiny brought to bear on a *sufficiency argument* is not consequential: no matter what standard of review we apply, if the evidence is not sufficient to allow a fact-finder to rationally find the defendant's guilt beyond a reasonable doubt, then the resulting conviction cannot be deemed free of reversible error. *Van Sickle*, 434 A.2d at 34 n.4.[7]

[¶14]   Kendall's argument requires us to construe section 358. "The interpretation of a statute is a legal issue we review de novo." *State v. Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125.  When interpreting a statute, "we seek to effectuate the intent of the Legislature, which is ordinarily gleaned from the plain language of the statute." *Id.* (quotation marks omitted).  "We will not look beyond the plain language of the statute if it is unambiguous." *State v. Knight*, 2016 ME 123, ¶ 9, --- A.3d ---.  We examine statutory language in the context of the entire statutory scheme, *see Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125, and seek to arrive at a construction that avoids absurd or illogical results, *see State v. Burby*, 2003 ME 95, ¶ 6, 828 A.2d 796.

---

[7] As we also stated in *Van Sickle*, however, "in the interest of sound appellate and trial practice, defense counsel should move for acquittal or for a new trial when, in the judgment of counsel, sufficiency of the evidence is questionable," in order to call particular claimed deficiencies to the trial court's attention and to create a more focused presentation for any appeal. *Id.* at 35.

[¶15] Pursuant to 17-A M.R.S. § 358(1)(A),

> [a] person is guilty of theft [by misapplication of property] if . . . [t]he person obtains property from anyone or personal services from an employee upon agreement, or subject to a known legal obligation, to make a specified payment or other disposition *to a 3rd person* or to a fund administered by that person . . . if that person intentionally or recklessly fails to make the required payment or disposition and deals with the property obtained or withheld as that person's own.

(Emphasis added.)

[¶16] A "person" is statutorily defined, in part, as a "human being." 17-A M.R.S. § 2(20) (2015). Kendall's "legal obligation" in the context of section 358(1)(A) is established in 36 M.R.S. § 177(1) (2015): "all taxes collected by a person . . . constitute a special fund in trust for *the State Tax Assessor*." (Emphasis added.) Kendall, as the person collecting withholding taxes on behalf of Chipco, thus owed the legal obligation to pay those taxes to a "3rd person," namely, the State Tax Assessor.

[¶17] Kendall asserts that the State Tax Assessor cannot be considered a "person" within the meaning of 17-A M.R.S. § 358(1)(A) because the State Tax Assessor is also a "public servant" as that phrase is used in the Criminal Code. *See* 17-A M.R.S. § 2(21) (2015) (defining "public servant" as "any official officer or employee of any branch of government"). Kendall argues that these definitions are mutually exclusive and that therefore the State Tax Assessor

cannot be a "person." This argument is undermined by the statutory definition of "person," which by its plain terms includes an individual state employee, even though that person may also fall within other definitional categories.

[¶18] Kendall also asserts that an employee's tax withholdings are, in reality, held for Maine Revenue Services rather than for the Assessor, and that because section 358 criminalizes the failure to make a specified payment "to a 3rd person," he cannot be guilty of charges brought under that statute. This argument fails because employee tax withholdings are held in trust for a person, the "State Tax Assessor," not for Maine Revenue Services. 36 M.R.S. § 177(1); *see also State v. Hopkins*, 526 A.2d 945, 949-50 (Me. 1987) (holding that the definition of "person" in section 2(21) "does not exclude . . . the State of Maine.").[8]

[¶19] Accordingly, the evidence supports the guilty verdicts on Counts 1-3, and the resulting convictions for those crimes are not affected by error.

---

[8] The State does not argue that withholding taxes be paid "to a fund administered by" the State Tax Assessor within the meaning of section 358(1)(A), and so we confine our analysis to the question of whether the State Tax Assessor is a "3rd person" to whom payment is to be made.

B.      36 M.R.S. § 184: Failure to Collect, Account for, or Pay over Tax

[¶20]   Kendall next argues that the court erred by denying his motion for a judgment of acquittal on Counts 5-7, which charge him with failure to collect, account for, or pay over tax in violation of 36 M.R.S. § 184(1).  Kendall argues, as he did at trial, that section 184(1) applies only to retailers and that the statute therefore does not apply to him as an officer or agent of Chipco, a non-retail enterprise.  This argument calls for us to construe section 184.

[¶21]  Section 184(1) provides:

> A person who is required under this Title to collect, truthfully account for and pay over any tax imposed by this Title and who intentionally fails to collect or truthfully account for or pay over that tax at the time required by law or rule, in addition to any other penalties provided by law, commits a Class D crime.

Section 184(3) then defines "person" to include:

> in addition to its defined meaning in section 111, subsection 3, an officer, director, member, agent or employee of another person who, in that capacity, is responsible for the control or management of the funds and finances of that person or is responsible for either the collection or payment of that *retailer's* taxes.

(Emphasis added.)

[¶22]  Section 184 is ambiguous because it "is reasonably susceptible of different interpretations."  *See Furhmann v. Staples the Office Superstore East, Inc.*, 2012 ME 135, ¶ 23, 58 A.3d 1083 (quotation marks omitted).  The

definition of "person" found in section 184(3) can reasonably be read to apply to all businesses—retailers and non-retailers alike—that are required to collect, truthfully account for, and pay over any taxes under Title 36. Alternatively, the phrase "that retailer's taxes" could reasonably be seen to restrict the definition of a "person" so that section 184 applies only to retail businesses. To resolve this ambiguity in section 184(3), in addition to using the principles of statutory construction noted above, we look beyond the plain language of the statute and the whole statutory scheme to consider "indicia of legislative intent such as the statute's history and its underlying policy." *Furhmann*, 2012 ME 135, ¶ 23, 58 A.3d 1083 (quotation marks omitted).

[¶23] The legislative history for section 184 does not provide guidance to resolve the ambiguity. *See, e.g.,* L.D. 2381, Statement of Fact, § 6, at 31 (112th Legis. 1986) (stating merely that this provision "enacts a standard criminal provision."). We therefore examine the larger statutory scheme of which section 184 is a part.

[¶24] Examining the context of the phrase "that retailer's taxes," we conclude that for two reasons, those words do not limit the broad definition of "person[s]" who are subject to the prohibition created in section 184(1). First, there is only one reference in section 184 to a "retailer." When the Legislature

referred to "*that* retailer's taxes," one would expect to find an antecedent reference to a retailer, which would assist in identifying "that retailer[]" whose taxes are at issue. There is no such reference, which indicates that the phrase "that retailer[]" does not modify the entire definition of "person" in section 184(3).

[¶25]  More fundamentally, section 184 provides the State with a criminal process to enforce tax-related duties of broad application imposed on individuals and entities.  Section 184 criminalizes the failure "to collect, truthfully account for and pay over *any tax imposed by this Title . . . .*"  36 M.R.S. § 184(1) (emphasis added).  "[T]his [t]itle"—namely, Title 36—encompasses a wide swath of taxes, including property taxes; sales and use taxes; business taxes; motor fuel taxes; inheritance, succession, and estate taxes; income taxes for individuals and various forms of business entities; and special taxes associated with particular businesses and activities.  *See* 36 M.R.S. §§ 201-6902 (2015).  Some of these tax obligations are borne by retailers— but most are borne by others.  It is also significant that the Legislature placed section 184(1) in the chapter entitled, "Uniform Administration Provisions," making it applicable as an overarching vehicle for the criminal enforcement of the particular taxation provisions that follow in Title 36.

14

[¶26]  Given the broad and comprehensive scope of Title 36, we cannot attribute to the Legislature an intent to limit the scope of criminal enforcement merely to a retailer's failure to comply with its tax obligations, and, for no evident reason, to thereby exclude from section 184(1) all other categories of people and entities that are subject to Maine's tax laws.

[¶27]  We recognize the principle of statutory construction that "[a]ll words in a statute are to be given meaning, and no words are to be treated as surplusage if they can be reasonably construed." *Freeman v. NewPage Corp.*, 2016 ME 45, ¶ 7, 135 A.3d 340 (quotation marks omitted).  Nevertheless, we decline to give section 184(3) the limiting effect that Kendall argues, which would confine the application of section 184 to retailers and thereby unreasonably and arbitrarily limit the reach of the criminal enforcement process for tax violations.  Such an interpretation would be inimical to the specific purpose of section 184 and to the overall framework of Title 36.

[¶28]  We therefore conclude that the definition of a "person" in section 184(3) is not restricted to a retailer.  Because the State presented evidence that Kendall was "responsible for the control or management of the funds and finances of" Chipco, and was "responsible for either the collection or payment of" Chipco's taxes, he was subject to prosecution for violating section 184(1).

The charges in counts 5-7 were applicable to Kendall, and the court did not err in denying his motion for judgment on acquittal of those counts.

C.     Rule 403: Evidence of Country Club Memberships

[¶29]  Finally, Kendall argues that the court abused its discretion by denying his motion in limine to exclude evidence of country club memberships purchased by Chipco for the benefit of his wife and him—what Kendall describes as evidence of affluence or wealth—based on his assertion that the evidence was unfairly prejudicial.  *See* M.R. Evid. 403.

[¶30]  Pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury. . . or needlessly presenting cumulative evidence."  *Id.*  Evidence is unfairly prejudicial if it "has an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one."  *State v. Begin*, 2015 ME 86, ¶ 20, 120 A.3d 97 (quotation marks omitted).  Our review of the trial court's determination of relevance under Rule 403 is for clear error, respecting the court's "broad discretion to weigh the relevance of evidence against the danger of unfair prejudice to the defendant."  *State v. Kimball*, 2016 ME 75, ¶ 16, 139 A.3d 914 (quotation marks omitted).

[¶31] The evidence at issue concerns two country club memberships purchased by Chipco, which were used only by Kendall and his wife, at the same time Chipco was experiencing financial difficulties and failing to pay over withholding taxes due to the State Tax Assessor. Kendall asserts that evidence about the details of the country club memberships constituted evidence of "affluence" that was unfairly prejudicial to him because it invited "class bias" while providing very little probative value.

[¶32] In denying Kendall's motion to exclude the evidence, the court determined that evidence of Kendall's use of the country club memberships was "highly relevant" to Kendall's underlying diversion, for personal benefit, of limited corporate funds that should have been used to pay withheld taxes over to the State Tax Assessor. Because violations of sections 358(1)(A) and 184 may be proved with evidence of intentional conduct, evidence that Kendall personally benefitted from the use of Chipco's money that, pursuant to section 177, Chipco promised but failed to pay over to the State Tax Assessor was relevant to the issues in the case. 36 M.R.S. § 177 (2015). Further, the charges of theft pursuant to section 358 required the State to prove that Kendall dealt with the withholdings as his own. The court's

determination that the evidence carried substantial probative value was not erroneous.[9]

[¶33] While allowing the State to present this evidence, the court displayed appropriate sensitivity to any concerns of wealth-based prejudice by prohibiting the State from presenting evidence about whether the country clubs were "rich or exclusive or anything of that nature," and from making unnecessarily repetitive references to them. By imposing restrictions on the manner and extent to which the State could present evidence of the Kendalls' use of the country club memberships, the court took effective steps to prevent "appeals to class prejudice [that] are highly improper and cannot be condoned. . . ." *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 239 (1940). By doing so, the court properly and thoughtfully invoked the balancing principles of Rule 403.

[¶34] In determining that the "highly probative" evidence of personal benefits Kendall gained from money held by Chipco for the State Tax Assessor was not substantially outweighed by any unfair prejudice, *see Begin*, 2015 ME 86, ¶ 20, 120 A.3d 97, the court acted well within the bounds of its discretion.

---

[9] Although not expressly mentioned by the court, evidence that Kendall diverted tax withholdings for his own purposes was relevant also because of evidence that Kendall told MRS officials that Chipco's funds were exhausted, and because Kendall argued at trial that other Chipco employees were responsible for the diversion and that he was suffering financially along with Chipco.

The entry is:

Judgment affirmed.

**On the briefs:**

Thomas F. Hallett, Esq., Hallett, Zerillo & Whipple P.A., Portland, for appellant John Kendall

Janet T. Mills, Attorney General, Gregg D. Bernstein, Asst. Atty. Gen., and Elizabeth Weyl, Stud. Atty., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Thomas F. Hallett, Esq., for appellant John Kendall

Gregg D. Bernstein, Asst. Atty. Gen., for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2013-5456
For Clerk Reference Only