MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 106
Docket:      Cum-17-174
Argued:      November 15, 2017
Decided:     July 26, 2018

Panel:       SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DMITRI L. CANNADY

HJELM, J.

[¶1]  In 2004, the Secretary of State mailed a notice to Dmitri L. Cannady's last known address, with information that his right to operate a motor vehicle was about to be revoked.  The letter was returned by postal officials to the Secretary of State's office with a notice on the envelope that Cannady had moved and left no forwarding address.  More than eleven years later, Cannady was stopped for a traffic violation and subsequently charged with operating after habitual offender revocation (Class D), 29-A M.R.S. § 2557-A(2)(A) (2017), and failing to give his correct name (Class E), 17-A M.R.S. § 15-A(2)

2

(2017); 29-A M.R.S. § 105(4) (2017).[1]  After holding a jury-waived trial, the court (Cumberland County, *L. Walker, J.*) convicted him of both charges.

[¶2]  This appeal by Cannady calls for us to answer the narrow question of whether the statutory requirement of notice is satisfied where the Secretary of State elects to mail the notification to the licensee's most recent address on file with the Secretary of State pursuant to 29-A M.R.S. § 2557-A(1)(A)(4) (2017) and that notification is returned by postal authorities as undeliverable. We conclude that, in those particular circumstances, the statutory notification process necessary for a conviction for operating after habitual offender revocation has not been satisfied.  We therefore vacate the conviction for that charge but affirm the conviction for failing to give his correct name.[2]

## I.  BACKGROUND

[¶3]  The following facts found by the court are supported by the record, which we view in the light most favorable to the judgment.  *See State v. Jeskey*, 2016 ME 134, ¶¶ 30, 33, 146 A.3d 127.  A Portland police officer working the

---

[1]  The State later dismissed the original charge of failing to give his correct name (Class E), 17-A M.R.S. § 15-A(2) (2017), and filed a substitute charge alleging a different formulation of the same offense, 29-A M.R.S. § 105(4) (2017).

[2]  Cannady also argues that the court erred by denying his motion to suppress based on its determination that the traffic stop was lawful and that the evidence was insufficient to support the conviction for failing to give his correct name.  Because these challenges are not persuasive, we do not address them further and affirm the conviction for the latter charge.

evening shift on December 4, 2015, pulled into a convenience store parking lot on Forest Avenue. The officer observed a person, later identified as Cannady, drive a vehicle out of the parking lot without wearing his seatbelt. After making a traffic stop for the seatbelt violation, 29-A M.R.S. § 2081(3-A) (2017), the officer asked Cannady for his name and identification documents. Cannady provided a false name and had difficulty providing an address, phone number, and social security number. Because the officer was unable to verify Cannady's identity with the name Cannady had given, the officer detained Cannady and transported him to the jail for fingerprinting. A cruiser video recording shows that while en route to the jail, Cannady admitted to the officer that he was not the person whose name he had provided. After Cannady identified himself correctly, the officer learned from the dispatcher that Cannady's license had been revoked and that there was an outstanding warrant for failing to appear on an earlier revocation charge.

[¶4] The State charged Cannady with operating after habitual offender revocation and failing to give his correct name. Cannady entered pleas of not guilty. At a jury-waived trial held in December of 2016, only the officer testified. The court admitted in evidence a certification from the Secretary of State's office stating that Cannady's license had been revoked as of the alleged offense

4

date and that notice of that revocation had been sent to Cannady in conformity with 29-A M.R.S. § 2482(1)(A) (2017); a notice of revocation dated July 21, 2004, addressed to Cannady and stating that his driver's license or right to operate will be revoked for an indefinite period effective August 5, 2004;[3] and an envelope bearing a postmark of July 26, 2004, which had been returned to the Secretary of State on August 11, 2004, with the notation, "MOVED LEFT NO ADDRESS UNABLE TO FORWARD RETURN TO SENDER."

[¶5]  At the close of the State's case, Cannady moved for a judgment of acquittal on the charge of operating after habitual offender revocation on the grounds that he did not have actual knowledge that his license had been revoked and that the Secretary of State had failed to take appropriate steps to provide that notice to him after the written notice of revocation was returned as undeliverable.  In a written order, the court denied Cannady's motion and

---

[3]  The appendix filed by Cannady contains a copy of his full driving record.  That document, however, was not offered in evidence at trial and is not contained in the record.  The Rules of Appellate Procedure provide that the "appendix *shall not* include any documents that are not a part of the trial court file or the record on appeal, other than a supplement of legal authorities authorized in subdivision (1) hereof."  M.R. App. P. 8(c)(2) (Tower 2016) (emphasis added); *see also* M.R. App. P. 8(g)(1) (restyled Rules).

The notice of revocation sent to Cannady that was admitted at trial, however, contains some limited information about his motor vehicle driving record, which shows that his driver's license expired in 2003 and that he was convicted in 1999, 2002, and 2004 for operating after suspension, thereby bringing him within the statutory definition of "habitual offender."  *See* 29-A M.R.S. § 2551-A(1)(A)(4) (2017).

found him guilty of both charges. At the sentencing hearing, the court imposed the mandatory minimum thirty-day jail term and $500 fine on the charge of operating after habitual offender revocation and a concurrent seven-day jail sentence on the charge of failure to give his correct name. Cannady filed a timely notice of appeal. *See* 15 M.R.S. § 2115 (2017); M.R. App. P. 2(a)(3), (b)(2)(A) (Tower 2016).[4]

## II. DISCUSSION

[¶6] Cannady asserts on appeal that pursuant to Maine's statutes and principles of due process—particularly given increases in the severity of sentences to be imposed for the crime of operating after habitual offender revocation[5]—the Secretary of State is required to do more when it is on notice that its chosen method of communication was unsuccessful and that the State

---

[4] The restyled Maine Rules of Appellate Procedure do not apply because this appeal was filed prior to September 1, 2017. *See* M.R. App. P. 1 (restyled Rules).

[5] The current statute that defines operating after habitual offender revocation establishes mandatory minimum penalties of at least a thirty-day jail term and a $500 fine, but, if aggravating factors are present, requires at least a two-year term of imprisonment and a $1,000 fine at the most severe range. 29-A M.R.S. § 2557-A(2)(A), (D) (2017). These sentencing provisions became effective in 2006. P.L. 2005, ch. 606, § A-11 (effective Aug. 23, 2006) (The statute was also amended in 2009 but not in a way that affects the substance of the penalties. *See* P.L. 2009, ch. 54, § 5 (effective April 22, 2009)). In contrast, the prior iterations of the statute established only the various classifications of the crime and did not prescribe any mandatory minimum penalties. *Compare* P.L. 2005, ch. 606, § A-11, *with* P.L. 2003, ch. 452, §§ Q-90, Q-91, *and* P.L. 1995, ch. 65, § C-14.

6

is required to prove that the licensee has received or otherwise has actual knowledge of the revocation.

[¶7] We review constitutional challenges de novo, *see State v. Jones*, 2012 ME 126, ¶ 35, 55 A.3d 432, and, on a challenge to the sufficiency of the evidence to support a criminal conviction, we look to "whether the trier of fact could have found every element of the offense charged beyond a reasonable doubt," *State v. Tayman*, 2008 ME 177, ¶ 4, 960 A.2d 1151. "The interpretation of a statute is a legal issue we review de novo." *State v. Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125. Criminal statutes are "'strictly construed . . . to avoid absurd, illogical, or inconsistent results.'" *Id.* (quoting *State v. Nastvogel*, 2002 ME 97, ¶ 6, 798 A.2d 1114). Our purpose in interpreting a statute is "to effectuate the intent of the Legislature, which is ordinarily gleaned from the plain language of the statute." *State v. Kendall*, 2016 ME 147, ¶ 14, 148 A.3d 1230 (quotation marks omitted). "We examine [the] statutory language in the context of the entire statutory scheme." *Id.* Only if the statute is ambiguous do we look beyond the plain language to the legislative history. *State v. Legassie*, 2017 ME 202, ¶ 13, 171 A.3d 589. "A statute is ambiguous if it is reasonably susceptible to different interpretations." *Carrier v. Sec'y of State*, 2012 ME 142, ¶ 12, 60 A.3d 1241 (quotation marks omitted).

[¶8]  For a person to be convicted of the crime of operating after habitual offender revocation, the State must prove beyond a reasonable doubt that the accused operated a motor vehicle on a public way when that person's license to operate had been revoked.  29-A M.R.S. § 2557-A(1)(A) (2017).  Additionally, and central to the issue in this case, the State must prove that the accused

(1)  [h]as received written notice of the revocation from the Secretary of State;

(2)  [h]as been orally informed of the revocation by a law enforcement officer;

(3)  [h]as actual knowledge of the revocation; or

(4)  [i]s a person *to whom written notice was sent* in accordance with section 2482 or former Title 29, section 2241, subsection 4.

29-A M.R.S. § 2557-A(1)(A) (emphasis added).

[¶9]  As section 2557-A(1)(A) is structured, the first three of these alternatives comprise various ways of providing the licensee with *actual* notice, whereas the fourth constitutes an *attempt* to provide notice.  At oral argument, the State made explicit that it is *not* asserting that Cannady had actual knowledge that the Secretary of State had revoked his license, even though he had been convicted three times for operating after suspension, *see supra* n.3, and provided incorrect identification information to the officer in this case.

8

Therefore, at issue here is only the last of the alternative elements prescribed in section 2557-A(1)(A)(4), which incorporates the terms of 29-A M.R.S. § 2482 (2017).

[¶10] Section 2482 provides the following methods by which the Secretary of State can satisfy the notice requirement set out in section 2557-A(1)(A)(4):

> 1. **Notification by Secretary of State.** Upon determining that a person is subject to license suspension or revocation, the Secretary of State shall immediately notify the person, in writing, of the license suspension or revocation. The notice:
>
>    A. Must be sent to the last name and address provided under section 1407 or, if the person has not applied for a license, on record with the Secretary of State;[6]
>
>    B. Must be sent to the address provided in the report of the law enforcement officer if that address differs from the address of record; or
>
>    C. May be served in hand.
>
>    . . . .
>
> 3. **Receipt date.** The notice is deemed received 3 days after mailing, *unless returned by postal authorities.*

---

6 A licensee has thirty days by which to notify the Secretary of State of an address change. 29-A M.R.S. § 1407 (2017).

29-A M.R.S. § 2482 (emphasis added). Cannady argues that the reference to "receipt" in section 2482(3) means that proof of mailing in and of itself, and without proof of actual receipt, is not enough to satisfy the requirements of this statute.

[¶11] As we discuss below, we have held in several cases that section 2482 does not require the State to prove that the licensee actually received notice of a license suspension or revocation. We have articulated that conclusion, however, in cases where the mailed notice was not returned by postal authorities as undeliverable. By contrast, in this case we are called upon for the first time to address the question of whether compliance with section 2482(1)(A), which ordinarily requires only that the notice be mailed to the licensee's last known address, is sufficient when that notice is returned by postal authorities and, pursuant to section 2482(3), the licensee is therefore not deemed to have received that notice in that situation.

[¶12] To address this issue, we review the evolution of Maine law applicable to the notice requirement, and we then apply the principles we glean from that review to the facts of this case.

10

A.    Maine Law Governing Notice of License Suspension and Revocation

[¶13]   In *State v. Kovtuschenko*, 521 A.2d 718 (Me. 1987), we first addressed the question of whether a mailed notice of a license suspension or revocation satisfies due process.   The defendant asserted that, as a constitutional matter, he could not be convicted of operating with a suspended license unless the State proved that he had actual knowledge of the suspension.[7]   *Id.* at 718-19.   At trial, the court admitted evidence that the defendant had not received the notice for the sole purpose of rebutting the State's evidence that the notice had been mailed.   *Id.* at 719.   The court

---

[7] The operating after suspension statute applicable in *State v. Kovtuschenko*, 521 A.2d 718, 718 (Me. 1987), provided in relevant part,

> **1.  Offense; penalty.** No person may operate a motor vehicle on any public highway of this State at a time when his license . . . has been suspended or revoked . . . when that person:
>
> . . . .
>
> **D.** Is a person to whom written notice was sent by ordinary mail at the last known address shown by the records maintained by the Secretary of State.

29 M.R.S.A. § 2184(1)(D) (Supp. 1983).  That statute did not contain or make reference to receipt of the notice, as 29-A M.R.S. § 2482(3) (2017) now does.  *See supra* ¶ 10.

ultimately found that, despite evidence of non-receipt, the State proved "the essential element of mailing." *Id.*

[¶14] Affirming the conviction on appeal, we explained the reason why the State was required to prove only that the notice had been mailed and not actually received:

> It has long been the law in this jurisdiction that proof of mailing raises a *presumption of receipt*. Undoubtedly the Legislature had this history in mind along with the administrative convenience of this system, and above all with its concern that presumptively dangerous operators must be removed from Maine's highways . . . .

*Id*. (emphasis added) (citations omitted); *see also* Field & Murray, *Maine Evidence* § 301.2 at 64 (6th ed. 2007) ("[A] [l]etter deposited in the mail properly addressed and stamped is presumed to have been received."). We concluded that the State was not required to prove that Kovtuschenko actually received the notice because "mail addressed to a licensee at the address he himself supplied is reasonably calculated to reach him and apprise him of the Secretary's action. Thus, it accords this Defendant all the process that is his due. . . . [T]he counterpart provision of the federal constitution imposes no more rigorous requirement of due process." *Kovtuschenko*, 521 A.2d at 719 (citations omitted) (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791,

799-800 (1983); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)).

[¶15] Importantly for the present case, the core of the analysis in *Kovtuschenko* is the connection we drew between mailing and receipt: proof of mailing is material, not for its own sake, but because mailing to the licensee's last known address creates some expectation that the addressee *received* the mailed notice, although the State need not go so far as to prove actual receipt. *Id.*

[¶16] Our next opinion that offered a meaningful discussion of the notice requirement was *State v. Lamarre*, 553 A.2d 1260 (Me. 1989). In two trials involving charges of operating after suspension, Lamarre presented evidence that he did not receive the mailed suspension notice because he actually received his mail at a post office box rather than at the street address he had provided to the Secretary of State. *Id.* at 1261-62. As in *Kovtuschenko*, the trial court in *Lamarre* admitted evidence of non-receipt only to refute the State's evidence that the notice had been mailed. *Id.* at 1262. On appeal following his convictions, Lamarre asserted that the operating after suspension or revocation statute, 29 M.R.S.A. § 2184 (Supp. 1987), which was materially the

same as the statute at issue in *Kovtuschenko*,[8] created an unconstitutional presumption that the licensee received the notice of suspension based on proof that the Secretary of State mailed that notice to the licensee's last known address. *Lamarre*, 553 A.2d at 1262. We rejected Lamarre's constitutional challenge, stating that "section 2184 creates no presumption of receipt, nor is the State required to prove receipt," because notice mailed to the address provided by the licensee is "'reasonably calculated'" to reach him or her. *Id.* (quoting *Kovtuschenko*, 521 A.2d at 719).

[¶17] In 1989, after we issued our opinion in *Lamarre*—where we disclaimed any statutory presumption of receipt based on mailing—the Legislature explicitly created a receipt provision in the statute applicable to provisional licenses by adding the following language: "The notice is deemed received 5 days after mailing, *unless returned by postal authorities*." P.L. 1989, ch. 866, § B-20 (effective April 19, 1990) (codified at 29-A M.R.S.A. § 2241-G(2)(F)(2) (Supp. 1990)) (emphasis added); *see also Blier v. Inhabitants of Town of Fort Kent*, 273 A.2d 732, 734 (Me. 1971) ("It is to be presumed the Legislature enacted [the statute] with a full knowledge of the existing

---

[8] *Compare* P.L. 1987, ch. 791, § 25, *with* P.L. 1981, ch. 679, § 43.

14

conditions of the common law and of statutes with respect to the subject-matter." (quotation marks omitted)).

[¶18]   When the motor vehicle code was recodified in 1993, that statutory reference to receipt was added to statutes governing operating after suspension or revocation, including the statute at issue in this case.  *See* P.L. 1993, ch. 683, §§ A-1, 2 (effective Jan. 1, 1995) (repealed and replaced Title 29 of the Maine Revised Statutes Annotated).  This language remains in effect today, except that the statute now provides a more immediate date of receipt, so that "notice is deemed received 3 days after mailing, unless returned by postal authorities."  29-A M.R.S. § 2482(3).

[¶19]   This was followed five years later by our decision in *State v. Tayman*, 2008 ME 177, ¶¶ 1, 4, 960 A.2d 1151, where the defendant appealed his conviction of operating after suspension by arguing in part that the Secretary of State's suspension notice, sent by regular mail, was insufficient.  At trial, "the State presented prima facie evidence" of that mailing,[9] and "Tayman offered nothing at trial to rebut the State's proof" or "allege[d] any specific infirmity with the mailing procedure."  *Id.* ¶ 9.  Affirming the conviction, we

---

[9] This evidence included a certificate issued by the Secretary of State, which stated that the notice was sent in accordance with statutory requirements.  *State v. Tayman*, 2008 ME 177, ¶ 3, 960 A.2d 1151.

observed that the State presented evidence that the notice process used by the Secretary of State met the statutory requirements, *id.* ¶ 8, which would mean that the notice had been mailed to Tayman's last known address, *id.* ¶ 6. We stated again "that proof of mailing of notice, rather than of actual receipt, satisfied both statutory and due process requirements," and that "the State is not required to prove receipt." *Id.* ¶ 7 (citing *Lamarre*, 553 A.2d at 1262; *Kovtuschenko*, 521 A.2d at 719). We therefore concluded that the State's "unrebutted" evidence of mailing allowed the court to rationally find that the State had proved notice beyond a reasonable doubt. *Id.* ¶ 9.

[¶20]  This review of Maine law governing the sufficiency of notice of a license suspension or revocation frames the issue presented in this case: are the requirements of sections 2557-A(1)(A)(4) and 2482(1)(A) met when the State elects to prove notice of a license revocation with evidence of mailing but that notice is returned by postal officials to the Secretary of State's office?

[¶21]  It is evident from section 2482 and applicable case law that the requirement of notice of a license suspension or revocation is not always satisfied with bare proof that the notice was mailed. Rather, our case law is rooted in *Kovtuschenko*, 521 A.2d at 719, where we explained that mailing, particularly to an address provided by the licensee, creates a reasonable

expectation that the licensee will receive that notice. This principle is solidified in the explicit codification of the receipt provision contained in section 2482(3), where the Legislature articulated that "notice is deemed received 3 days after mailing" unless that notice is "returned by postal authorities." Were the statute applied so that the act of mailing by itself is sufficient when the notice is returned by postal officials, section 2482(3) would be rendered meaningless in contravention of the principle of construction that statutory language may not "be treated as surplusage if a reasonable construction applying meaning and force is otherwise possible." *State v. Lowden*, 2014 ME 29, ¶ 14, 87 A.3d 694 (quotation marks omitted); *see also State v. Day*, 2000 ME 192, ¶ 5, 760 A.2d 1039 ("A criminal statute must be strictly construed.").

[¶22] Furthermore, the connection between proof of mailing and some expectation of receipt is supported by the notice requirements enumerated by section 2557-A(1)(A). As noted above, *see supra* ¶¶ 8-9, the first three methods by which the State can prove the element of notice are with evidence that the licensee received some form of actual notice of the administrative action taken against his or her license. *See* 29-A M.R.S. § 2557-A(1)(A)(1)-(3). In contrast, although the fourth method nominally requires only proof of the mailing itself, *id.* § 2557-A(1)(A)(4), that mailed notice is deemed to be received *unless* postal

authorities return the notice as undelivered to the Secretary of State's office, *id.* § 2482(3). It would be incongruous to construe section 2482(1)(A) in a way that allows the act of mailing to be just as sufficient as the pathways to actual notice also provided in the statute when that mailed notice is returned to the Secretary of State's office. *See Nastvogel*, 2002 ME 97, ¶ 6, 798 A.2d 1114 (stating that "statutory language must be construed to avoid absurd, illogical, or inconsistent results" (quotation marks omitted)). If there is any ambiguity resulting from the interplay between section 2482(1)(A) and 2482(3), that ambiguity is resolved through the Legislature's express enactment of a provision that incorporates the prospect of receipt into the mailing requirement after we had specifically stated in *Kovtuschenko*, 521 A.2d at 719, that that was the Legislature's evident intention. That expectation of receipt is a strong one: the licensee is "deemed" to have received the notice three days after it is mailed. 29-A M.R.S. § 2482(3). But it is subject to a narrow and clearly defined exception: that "deemed" receipt does not happen when postal authorities return the notice to the Secretary of State. *Id.*

[¶23] Therefore, in both case law and statute, the principle of receipt is brought directly into the requirement of notice because mailing is tethered to the *result* of that mailing—namely, the prospect that the notice will be received.

18

Accordingly, we hold that when postal officials return a mailed notice to the Secretary of State, the specific type of notice defined in section 2482, which is brought into the criminal statute, *see* 29-A M.R.S. § 2557-A(1)(A)(4), is not satisfied.[10]

B.    Application of the Notice Statute

[¶24]  We now consider how these legal principles apply to the State's evidence presented against Cannady.

[¶25]  We begin by acknowledging that the unavailability of "deemed" notice that occurs when the notice is returned by the post office does not preclude proof of notice by other means.  As noted above, however, *see supra* ¶ 9, at oral argument the State explicitly disclaimed any contention that Cannady's conviction of operating after habitual offender revocation can be affirmed based on any other theory of notice.  Rather, the State relies *entirely* on its assertion that the Secretary of State satisfied the requirements of sections

---

[10]  We note that, as a matter of due process, when the Secretary of State suspends or revokes that person's license, the licensee's noncompliance with the statutory obligation to update his or her address with the Secretary of State does not result in the forfeiture of that person's "right to constitutionally sufficient notice."  *Jones v. Flowers*, 547 U.S. 220, 232 (2006); *see also Giberson v. Quinn*, 445 A.2d 1007, 1008 (Me. 1982) ("That a State must observe the strictures of due process whenever it moves to deprive a person of his [or her] motor vehicle operator's license is a well established rule of law.").  Therefore, although Maine licensees are required to notify the Secretary of State of any change of address, *see* 29-A M.R.S. § 1407, the failure to do so does not result in the loss of the constitutional due process right to notice.

2482(1)(A) and 2557-A(1)(A)(4) by merely having mailed the notice to Cannady's last known address, even though the notice was returned by postal authorities.

[¶26] The terms of the statute foreclose that result, because the undisputed facts in this case establish that postal authorities returned the notice of revocation to the Secretary of State's office with information that it was undeliverable. Therefore, in the face of the State's unequivocal disavowal of reliance on any other type of notice, the evidence was insufficient for the court to find that the State proved notice as required by statute, which is an essential element of the crime of operating after habitual offender revocation, *see* 29-A M.R.S. § 2557-A(1)(A)(4), (2)(A), and Cannady's conviction for that crime must be vacated.

[¶27] To be clear, our conclusion here does not disturb settled law in Maine that when the State's case is built on the provisions of sections 2482(1)(A) and 2557-A(1)(A)(4) and the Secretary of State's mailing has not been returned by postal authorities, the State is not required to prove affirmatively that the licensee actually received notice of suspension or

revocation.[11]  In most cases, evidence of mailing, if accepted by the fact-finder, will be sufficient to satisfy the notice requirement pursuant to section 2557-A(1)(A).  *See Tayman*, 2008 ME 177, ¶¶ 7, 9, 960 A.2d 1151; *Lamarre*, 553 A.2d at 1262; *Kovtuschenko*, 521 A.2d at 719.  Rather, our holding today is narrowly drawn and limited by the undisputed fact that, although the Secretary of State mailed notice to Cannady's last known address, the notice was returned by postal officials as undeliverable and the Secretary of State did not subsequently take additional steps to provide notice in any of the ways described in sections 2482(1) or 2557-A(1)(A).  Given the record and the limited argument of the State, pursuant to section 2482(3) and the foundational common law principle that creates an expectation of receipt based on evidence of mailing, the State did not present evidence on which the court was entitled to find that the Secretary of State satisfied the statutory requirement of notice.  *See Tayman*, 2008 ME 177, ¶ 4, 960 A.2d 1151 (describing the appellate standard for reviewing the sufficiency of the evidence).

---

[11]  Unlike the defendants in *Lamarre* and *Kovtuschenko,* who relied on evidence of non-receipt merely to rebut the State's evidence of mailing, *see State v. Lamarre*, 553 A.2d 1260, 1262 (Me. 1989); *Kovtuschenko*, 521 A.2d at 719, Cannady does not rely on an argument that the notice was not mailed.

### III. CONCLUSION

[¶28]   In summary, we conclude that the evidence is insufficient to support the court's determination that the Secretary of State satisfied the statutory element governing notice of Cannady's license revocation.  For that reason, we vacate the conviction for the charge of operating after habitual offender revocation.[12]

The entry is:

> The judgment of conviction for operating after habitual offender revocation is vacated, and the case is remanded for entry of judgment of acquittal on that charge.  The judgment of conviction for failing to give his correct name is affirmed.

---

Tina Heather Nadeau, Esq. (orally), The Law Office of Tina Heather Nadeau, PLLC, Portland, for appellant Dmitri L. Cannady

Stephanie Anderson, District Attorney, and Jennifer F. Ackerman, Asst. Dist. Atty. (orally), Prosecutorial District Two, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2015-7186
FOR CLERK REFERENCE ONLY

---

12  Because we vacate the conviction on statutory grounds, we do not reach Cannady's assertion that the steps taken by the Secretary of State to notify him of the license revocation were insufficient to satisfy his right to due process. *See State v. Bassford*, 440 A.2d 1059, 1061 (Me. 1982) (stating that as a "fundamental rule of appellate procedure . . . a court should avoid expressing opinions on constitutional law whenever a nonconstitutional resolution of the issues renders a constitutional ruling unnecessary" (quotation marks omitted)).