2012 ME 88

**STATE of Maine**

v.

**Kevin A. JONES.**

Supreme Judicial Court of Maine.

Argued: May 8, 2012.
Decided: July 5, 2012.

Allan E. Lobozzo, Esq. (orally), Lewiston, for appellant Kevin A. Jones.

Norman R. Croteau, District Attorney, and Patricia Reynolds Regan, Asst. Dist. Atty. (orally), Office of the District Attorney, Auburn, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Kevin A. Jones appeals from a judgment entered in the District Court (Lewiston, *Lawrence, J.*) following a jury-waived trial at which Jones was found guilty of carrying a concealed weapon (Class D), 25 M.R.S. § 2001–A(1)(B) (2011).[1] Jones argues that the evidence

---

1. The statute provides, in relevant part:

    **2001–A. Threatening display of or carrying concealed weapon**

    **1. Display or carrying prohibited.** A person may not, unless excepted by a provision of law:

    . . . .

    **B.** Wear under the person's clothes or conceal about the person's person a firearm, slungshot, knuckles, bowie knife, dirk, stiletto or other dangerous or deadly weapon usually employed in the attack on or defense of a person.

    **2. Exceptions.** The provisions of this section concerning the carrying of concealed weapons do not apply to:

    . . . .

was insufficient to establish beyond a reasonable doubt that the knives he carried were statutorily prohibited from being concealed. Because the statute's prohibitions applicable to knives are limited to those knives that, in their design or primary function, constitute a "dangerous or deadly weapon usually employed in the attack on or defense of a person," we vacate the conviction.

## I. BACKGROUND

[¶ 2] Officer Matthew Johnson of the Auburn Police Department was patrolling in his marked cruiser in Auburn on March 25, 2011. At approximately 2:30 a.m., he observed Jones and another individual crossing Court Street in a well-lit area near a restaurant and a supermarket. Officer Johnson pulled his cruiser next to them, got out immediately, and asked, "Hey, what's going on guys?" Although the other individual stopped, Jones continued walking and began reaching into his pocket. Officer Johnson instructed him to remove his hand from his pocket. Jones responded, "I'm on probation. I was just getting my ID."

[¶ 3] Jones informed Officer Johnson that he was subject to searches as a condition of his probation. Officer Johnson asked Jones if he had any weapons on his person and Jones replied that he did not. When Officer Johnson searched Jones, he lifted his shirt and found two identical knives clipped to the inside of Jones's pants. Jones's shirt extended down past his waist and concealed the knives and their clips from Officer Johnson's view.

[¶ 4] The knives were admitted as evidence at trial. Each knife has a blade that manually unfolds from the handle and locks into a fixed position. The length of each knife is approximately seven inches from the tip of the blade to the base of the

C. Knives used to hunt, fish or trap as defined in Title 12, section 10001;

handle when the blade is unfolded and locked in place. Each blade is about three inches in length; the first two inches from the tip toward the handle comprise a single sharp cutting edge, and the remaining inch has a serrated edge. Officer Johnson testified that he fishes and hunts and that these knives are not the type commonly used in either of those activities. However, he also stated that they can be used for utility purposes and are the type of knives that could be purchased in the sporting goods department of a retail store. No evidence was presented indicating that the utility-type knives were a type of knife usually employed in the attack on or defense of a person.

[¶ 5] The court found Jones guilty and sentenced him to two days' imprisonment with credit for time already served and a $100 fine. At Jones's request, the court provided written findings of fact and conclusions of law. The court explained its decision, in part:

> Given the encounter with Defendant in the wee hours of the morning on March [25]th, together with the fact that: Defendant was on probation; Defendant failed to disclose ... the presence of the knives when asked if he had any weapons on his person; Defendant failed to give a reasonable explanation of why he had the knives at all at 2:30 a.m. in the morning; the size, the heft, and the sharp and serrated edges of the [blades], the court believes that common sense compels the conclusion that the knives in Defendant's possession ... were dangerous or deadly weapons usually employed in the attack on or defense of a person. These were not butter knives; these knives would easily do significant

25 M.R.S. § 2001–A(1)(B), (2)(C) (2011).

damage to human tissue, human organs and major arteries.

Jones then brought this appeal.

## II. DISCUSSION

### A. Standard of Review

■ [¶ 6] We review the trial court's factual findings for clear error and the legal conclusions it derived from those findings de novo. *See State v. Milliken,* 2010 ME 1, ¶ 19, 985 A.2d 1152. The interpretation of a statute is a legal issue we review de novo. *See State v. Christian,* 2012 ME 51, ¶ 7, 40 A.3d 938. "In interpreting a statute, we seek to effectuate the intent of the Legislature, which is ordinarily gleaned from the plain language of the statute." *State v. Thongsavanh,* 2007 ME 20, ¶ 27, 915 A.2d 421 (quotation marks omitted). "We consider the language in the context of the entire statutory scheme." *Id.* Further, "a criminal statute must be strictly construed ... to avoid absurd, illogical, or inconsistent results." *State v. Nastvogel,* 2002 ME 97, ¶ 6, 798 A.2d 1114 (alteration omitted) (quotation marks omitted).

### B. Sufficiency of the Evidence

■ [¶ 7] Jones argues that the evidence is insufficient to establish beyond a reasonable doubt that the knives at issue are "dangerous or deadly weapons usually employed in the attack on or defense of a person" within the meaning of section 2001–A. When a criminal defendant claims on appeal that the evidence was insufficient to support his conviction, we view the evidence in the light most favorable to the State in determining whether the fact-finder could rationally have found each element of the offense beyond a reasonable doubt. *See State v. Burns,* 2011 ME 92, ¶ 10, 26 A.3d 817.

[¶ 8] A plain language reading of the concealed weapons statute reveals that the Legislature intended to prohibit persons from concealing certain types of weapons and knives based upon their design or primary function. 25 M.R.S. § 2001–A(1)(B). The statutory scheme expressly prohibits bowie knives, dirks, and stilettos from being concealed and expressly exempts knives used for hunting, fishing, and trapping from the statute's prohibitions. 25 M.R.S. § 2001–A(1)(B), (2)(C) (2011). Even though most knives, including the knives at issue here, are capable of causing serious bodily injury, the plain language of the statute establishes that the Legislature did not intend to prohibit the concealment of all knives. Rather, the statute expressly prohibits the concealment of only those knives that are specifically designed to be "usually employed in the attack on or defense of a person." *Id.* § 2001–A(1)(B). Despite the obvious fact that knives used in hunting, fishing, and trapping are capable of inflicting serious bodily injury, the statute expressly exempts knives used in those pursuits from its prohibitions. *See id.* § 2001–A(2)(C).

■ [¶ 9] Accordingly, whether a knife is a "dangerous or deadly weapon usually employed in the attack on or defense of a person" for purposes of section 2001–A(1)(B) requires a fact-specific inquiry to determine whether the knife is designed for use against human beings or whether its primary function is to attack or defend a person.[2] The focus of the State's evidence at trial—whether the knives at issue were dangerous weapons and whether the circumstances in which the knives were discovered suggested that they could be used to attack or defend a person—was not sufficient to support a conviction.

---

2. We note that this standard applies with equal force to knives or other instruments that, due to modifications or alterations, fall within the above criteria.

[¶ 10] For purposes of this case, the State was required to prove beyond a reasonable doubt that Jones: (1) wore under his clothing or concealed about his person, (2) a knife that is "usually employed in the attack on or defense of a person." *Id.* § 2001–A(1)(B).

■ [¶ 11] It is the intrinsic qualities of the knife, not the circumstances in which it is found, that informs the determination whether it is the type of knife that the Legislature has prohibited from being concealed. Any other approach would produce inconsistent results, leave the public to guess as to how to conform its conduct to the law, and judicially engraft a culpable state of mind requirement into a statutory provision that is silent as to intent.[3] *See id.* As a result, the court erred to the extent it relied on the extraneous circumstances surrounding Officer Johnson's discovery of the knives in concluding that they fell within the class of knives or weapons that the Legislature has prohibited from being concealed.

[¶ 12] No evidence presented at trial established that the knives were designed for use against human beings or that their primary function is for use in the attack or defense of a person. The court, in its written findings of fact and conclusions of law, noted "the size, the heft, and the sharp and serrated edges of the [blades]" and that "these knives would easily do significant damage to human tissue, human organs and major arteries." Such a description, however, could be given of any knife and renders Jones's knives indistinguishable from those that the Legislature has expressly exempted from the prohibition against concealment. Thus, there is no factual basis in the record to support a conclusion that Jones's knives fall within the class of knives that the Legislature has prohibited individuals from concealing.

The entry is:

Judgment vacated.

---

3. We note that the Legislature, in a statutory provision that is not referenced in section 2001–A, has prohibited the possession or distribution of certain knives based upon their design and, unlike section 2001–A, has included an intent element in criminalizing possession or distribution of these knives:

A person is guilty of possession or distribution of dangerous knives if, when the person has no right to do so, the person knowingly manufactures or causes to be manufactured, or knowingly possesses, displays, offers, sells, lends, gives away or purchases any knife that has a blade that opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife, or any knife having a blade that opens or falls or is ejected into position by the force of gravity, or by an outward, downward or centrifugal thrust or movement.

17–A M.R.S. § 1055(1) (2011).