MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 123
Docket:      Ken-15-534
Argued:      May 5, 2016
Decided:     August 4, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.
Majority:    MEAD, GORMAN, JABAR, and HJELM, JJ.
Dissent:     SAUFLEY, C.J., and ALEXANDER, J.

## STATE OF MAINE

v.

## CHRISTOPHER T. KNIGHT

HJELM, J.

[¶1]   This case calls for us to determine whether Maine's restitution statutes authorize an order of restitution for the benefit of the Maine State Police (MSP) for expenses it incurred when it repaired a woods road it used during a criminal investigation and its aftermath.  We conclude that in the circumstances of this case, the MSP is not a statutorily eligible recipient of restitution, and we therefore vacate the order of restitution but affirm the remaining aspects of the judgment of conviction and the related sentence.

### I.  BACKGROUND

[¶2]   In 2013, Christopher T. Knight was arrested after living for twenty-seven years in complete isolation in the woods near Rome.  During

that time, Knight committed many burglaries and thefts, entering and stealing from nearby residences. After he was arrested and charged, in October 2013 he pleaded guilty in the trial court (Kennebec County, *Mills J.*) to a number of those burglaries and thefts, and was admitted to the co-occurring disorders court (CODC) pursuant to an agreement between the parties as approved by the court. Imposition of sentence was deferred pending Knight's participation in the CODC.

[¶3]  During the plea hearing, the parties entered into the record an agreement for a particular set of sentences that were to be imposed if Knight's participation in the CODC were successful, and greater sentences that the State would recommend to the court if Knight did not fulfill the requirements of the CODC program. Under both alternatives, the parties agreed that as part of the sentences imposed in the primary case,[1] which consists of one count of burglary (Class B), 17-A M.R.S. § 401(1)(B)(4) (2015), and one count of theft by unauthorized taking or transfer (Class E), 17-A M.R.S. § 353(1)(A) (2015), Knight would be ordered to pay restitution of approximately $1,900 to the "victims of charged and uncharged cases." Additionally, the State reserved the

---

[1]  The record indicates that Knight pleaded guilty to charges in a total of seven cases. The sentences for all charges in all cases were to be concurrent, but controlled by the sentences imposed in one case that was treated as the primary one for procedural purposes. That primary case is the one that includes probation as part of the sentences and is the case before us.

right to seek additional restitution at the sentencing hearing. That additional restitution is the subject of this appeal.

[¶4] In March 2015, the court held a sentencing hearing where the parties agreed that Knight had satisfied the requirements associated with the CODC program. Pursuant to the parties' earlier agreement on the sentence that would be imposed if he met those requirements, the court sentenced Knight on the burglary charge to a term of imprisonment of five years with all but seven months suspended, to be followed by three years of probation, and to a concurrent jail term on the charge of theft.[2] The court imposed concurrent sentences on the remaining charges in the companion cases.

[¶5] When Knight was sentenced, he had already paid almost the entire agreed amount of restitution for the victims of the burglaries and thefts. Separate from that restitution obligation, at the sentencing hearing the State requested that the court order Knight to pay an additional $1,125 to the MSP for the cost it incurred to repair a private road that law enforcement officers damaged when they repeatedly drove to and from Knight's campsite after it was discovered. Knight objected to the request, but the court determined that

---

[2] Pursuant to the parties' agreement, if Knight had not completed the CODC program successfully, the State would have been entitled to seek an overall unsuspended prison term of seven years.

4

if the police had not paid for the repairs, the local residents would have had to do so and that "under the extraordinary circumstances of this case, [$1,125] would be a fair amount to be paid by Mr. Knight." The court therefore ordered Knight to pay the amount, also making that payment a condition of his probation.[3]

[¶6] Knight subsequently filed a motion for correction of sentence pursuant to M.R.U. Crim. P. 35(a), arguing that the restitution order of $1,125 was not authorized by statute. At a hearing held on the motion, the State further explained that the MSP used and then repaired the road after it collected evidence from Knight's campsite and cleaned and restored the site to its natural state. The State acknowledged that the victims of the charged offenses did not own the land where the campsite and private road were located.

[¶7] The court denied Knight's Rule 35 motion, concluding that the road repair costs were compensable under the restitution statute as an "environmental clean-up expense," 17-A M.R.S. § 1322(3)(C-1) (2015), and

---

[3] Although the judgment and commitment itself does not indicate for whose benefit restitution was ordered, the court made clear at the sentencing hearing that the $1,125 in restitution was to be paid to the MSP.

that the MSP was an authorized claimant, *see* 17-A M.R.S. § 1324 (2015).

Knight appealed.[4]

## II. DISCUSSION

[¶8]   Knight contends that the restitution order of $1,125 was not authorized by statute, because neither the MSP nor the owner of the property that was damaged is a "victim" for whose benefit the court can order payment of restitution.  *See* 17-A M.R.S. §§ 1322(7), 1324(1) (2015).[5]

[¶9]   The dispute presented here is entirely a matter of statutory interpretation and application.  We review the legality of a sentence and questions of statutory interpretation de novo.  *See State v. Bennett*, 2015 ME 46, ¶ 14, 114 A.3d 994 (legality of sentence); *State v. Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125 (statutory interpretation).  "In interpreting a statute, we seek to effectuate the intent of the Legislature, which is ordinarily gleaned from the plain language of the statute."  *Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125 (quotation marks omitted).  We will not look beyond the plain language of the

---

[4] The case is before us both as a direct appeal and as a sentence appeal based on the Sentence Review Panel's order granting Knight's application for leave to appeal from the sentence.  *See* M.R. App. P. 20(h).

[5] Knight also argues that the cost to repair a private road does not constitute an "economic loss" pursuant to 17-A M.R.S. § 1325(1) (2015).  Because neither the MSP nor the owner of the property on which the road is located is qualified to obtain restitution in the first place, we do not reach that question.

6

statute if it is unambiguous. *See State v. Paradis*, 2010 ME 141, ¶ 5, 10 A.3d 695.

[¶10] Pursuant to 17-A M.R.S. § 1324, a sentencing court is authorized to require an offender to pay restitution only to people or entities that have a statutorily defined connection to the case. Maine's restitution statutes also operate as a limitation on the court's authority to order that monetary relief; restitution may be imposed only if allowed by statute. *State v. Kotredes*, 2003 ME 142, ¶ 23, 838 A.2d 331 ("A court is not free to impose restitution that is not plainly allowed by the restitution statute[s].").[6]

[¶11] In order for the court to exercise its statutory authority to order an offender to pay restitution, the designated recipient of that restitution must either be a "victim," or "[a]ny person, firm, organization, corporation or government entity which has provided recovery *to the victim* as a collateral source, but only to the extent that such recovery was actually made." 17-A M.R.S. § 1324 (emphasis added). In other words, the court would be authorized to require Knight to pay restitution to the MSP only if the MSP

---

[6] Although a court may order restitution in any case when the parties have agreed to the specific amount imposed, *see* 17-A M.R.S. § 1330-A (2015); *State v. McDonough*, 2009 ME 39, ¶ 7, 968 A.2d 549, Knight did not consent to the imposition of $1,125 in restitution. Further, the State does not argue that the restitution to be paid to the MSP is encompassed by the separate restitution order intended for "victims of charged and uncharged cases," which amounts to approximately $1,900. The court's authority to order restitution to the MSP is therefore disputed and must be determined based on the restitution statutes.

itself is a "victim," or if the MSP collaterally compensated another person who is a "victim."[7]  Based on the unambiguous terms of the statute, the MSP does not qualify under either alternative.

[¶12]  Section 1322(7) defines a "victim" as "a government that suffers economic loss or a person who suffers personal injury, death or economic loss as a result of a crime."  We have held that a "victim" within the meaning of the restitution statutes is a person or entity who has sustained a loss resulting from the crime for which the defendant is convicted in that case.  *State v. McDonough*, 2009 ME 39, ¶ 5, 968 A.2d 549 (explaining that "the criminal action committed by the defendant must have caused the damages claimed by the victim *of that crime*" (emphasis added)); *State v. Beaudoin*, 503 A.2d 1289, 1290 (Me. 1986) (holding that restitution must be for the "loss *caused to a victim by the crime* for which a defendant is convicted"); *State v. O'Donnell*, 495 A.2d 798, 801 (Me. 1985) (stating that "the Legislature intended . . . 'victim' to mean a person who suffers personal injury, death or economic loss as a result" of the specific "crime alleged in the charging instrument" (quotation marks omitted)).

---

[7]  A law enforcement agency may be entitled to recover restitution for a "critical investigation expense," which is defined as either the cost of an audit or financial analysis used to determine the extent of a victim's financial loss in certain circumstances, or "the cost of analysis of suspected illegal drugs."  17-A M.R.S. § 1322(3)(A-1) (2015).  This aspect of the restitution statute is inapplicable here, and the State does not argue otherwise.

[¶13]   Here, the MSP is not a victim of any of Knight's charged conduct—namely, burglaries and thefts—and is therefore not entitled to an order of restitution on that basis.

[¶14]  Further, the owner of the property traversed by the MSP is not a "victim" of any of the crimes for which Knight was convicted because, as the parties agree, Knight did not commit any of the crimes for which he was convicted against the property owner.  The MSP's payment for the damage it caused to the road did not qualify the agency to become a recipient of restitution as a "government entity which has provided recovery . . . as a collateral source" under section 1324(3), because to qualify, that benefit must have been collaterally conferred on a "victim."  As noted above, however, the property owner is not a "victim."  The MSP was therefore not entitled to receive restitution on the basis of recovery provided as a "collateral source."

[¶15]   Because the MSP is not an "[a]uthorized claimant[]," 17-A M.R.S. § 1324, it is not entitled to payment of restitution, regardless of whether the *nature* of the expense in this case could otherwise support a restitution order.  Accordingly, the court was not authorized to order Knight to pay restitution to the agency in addition to the amount Knight was required to pay to the victims of the crimes for which he was convicted.  We must

therefore vacate that aspect of the sentences requiring Knight to pay $1,125 in restitution to the MSP.

The entry is:

> Restitution order in the amount of $1,125 vacated. Judgment of conviction and sentence affirmed in all other respects.

———————————

SAUFLEY, C.J., and ALEXANDER, J., dissenting.

[¶16]  We must respectfully dissent.

[¶17]  For twenty-seven years, Christopher Knight lived, as the Court's opinion notes, "in complete isolation in the woods."  Court's Opinion ¶ 2.  The record reflects that during those twenty-seven years, Knight stole items from others to provide himself with life's necessities.  His burglaries and thefts caused local property owners to feel that they were constantly being watched as their possessions disappeared from their homes and "to spend thousands of dollars on repairs and materials" because of the "magnitude of the impact" that Knight's conduct had on them.

[¶18]  Once Knight was finally discovered, law enforcement had to make heavy, damaging use of a private road to clear the land of the amassed stolen items and return at least some of those items to the victims.  The sentencing

court required Knight, as part of his restitution sentence, to reimburse the State for the modest cost of repairing that road. We would affirm the court's decision.

[¶19] With the agreement of the State, Knight was convicted of and sentenced on only a very few burglary and theft charges despite his years of living off the possessions of others. He was sentenced to seven unsuspended months of incarceration, with an underlying potential sentence of five years. Additionally, he was placed on probation for three years and ordered to pay an agreed amount of $1,894.75 in restitution to a few of his victims, plus the additional restitution of $1,125, which Knight contested, to reimburse the State for sums paid to a private individual to repair the road that was damaged in the recovery of the property stolen from Knight's victims.

[¶20] The trial court determined, we would conclude correctly, that the cost to repair the road was a legitimate restitution cost as an environmental cleanup expense, *see* 17-A M.R.S. §§ 1322(3)(C-1), 1325(1) (2015), resulting from the State's use of the private road to clear the hideout of the stolen property and return that property to Knight's victims. The State's costs to repair the road were recoverable by the State pursuant to 17-A M.R.S. § 1322(3)(C-1) because those costs were incurred incident to clearing the

stolen items from land that was not Knight's own, with the hope of returning some of the stolen items to the victims of Knight's thefts. Knight's crimes resulted in damage to the land as law enforcement traversed the land to recover the stolen property. Thus, we would determine, as did the trial court, that these are costs recoverable as restitution falling within the definition of an "[e]nvironmental clean-up expense," which means "any reasonable expense incurred for products and services needed to clean up any harm or damage caused to the environment," *id.*, and that the government is a "victim" because it suffered the loss of those funds in the course of that environmental cleanup, *see* 17-A M.R.S § 1322(7) (2015). It is no more complicated than that.

[¶21] If one or several of the victims had undertaken, on their own, recovery of the items stolen from them and found at Knight's hideout, the costs to repair the road, if paid by the victims as a necessary cost of recovery of the items, would be payable as restitution. The State, acting in place of the victims, is in the same position and entitled to recover the same costs that victims otherwise might have incurred for recovery of the stolen items. *See* 17-A M.R.S. § 1324(3) (2015). Therefore, we would conclude that the trial court acted properly in ordering Knight to pay the $1,125 cost for repair of the road damaged incident to investigation and recovery of the stolen items.

12

[¶22]  The State's costs to recover items from Knight's hideout were undoubtedly caused by his criminal activities, yet the Court holds that Knight need not reimburse the State for those costs.  Given the Court's narrow reading of the statute, we would urge the Legislature to clarify the restitution provisions so that a person who commits similar criminal activity in the future cannot avoid the costs directly related to the restoration of property damaged in the course of recovering stolen items.

---

**On the briefs:**

Walter F. McKee, Esq., McKee Billings, P.A., Augusta, for appellant Christopher T. Knight

Maeghan Maloney, District Attorney, and Emily Collins, Stud. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine


**At oral argument:**

Walter F. McKee, Esq., for appellant Christopher T. Knight

Paul F. Cavanaugh II, Asst. Dist. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine