MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 22
Docket:        Aro-19-9
Argued:        September 25, 2019
Decided:       January 30, 2020

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*
Majority:      SAUFLEY, C.J., and MEAD, GORMAN, and HUMPHREY, JJ.
Concurrence/
  Dissent:     ALEXANDER and JABAR, JJ.

STATE OF MAINE

v.

COLBY D. CONROY

GORMAN, J.

[¶1]  Colby D. Conroy appeals from a judgment of conviction of gross sexual assault (Class C), 17-A M.R.S. § 253(2)(F) (2018), unlawful sexual contact (Class D), 17-A M.R.S. § 255-A(1)(K) (2018), sexual abuse of a minor (Class D), 17-A M.R.S. § 254(1)(A) (2018), and unlawful sexual touching (Class E), 17-A M.R.S. § 260(1)(J) (2018), entered in the trial court (Aroostook County, *Stewart, J.*) after a jury-waived trial.  Conroy argues that the trial court erred when it found that the State had disproved his statutory defense to the charge of sexual abuse of a minor, and that his convictions on the remaining

---

* Although Justice Hjelm participated in the appeal, he retired before this opinion was certified.

three charges were based on the court's misinterpretations of the relevant statutory language. We affirm in part and vacate in part.

## I. BACKGROUND

[¶2] The following facts are drawn from the parties' stipulations, *see State v. Haskell*, 2008 ME 82, ¶ 2, 955 A.2d 737, and the findings of the trial court that are supported by competent evidence admitted at trial, *see State v. Proia*, 2017 ME 169, ¶ 2, 168 A.3d 798. In the spring of 2014, Conroy was approved as a substitute teacher for Regional School Unit 39 (RSU 39). On May 22, 2017, he served as the substitute teacher for a culinary arts class at Caribou High School. While serving as the substitute teacher on that day, Conroy was an employee of RSU 39, and he had instructional, supervisory, and disciplinary authority over the students in that class.

[¶3] Among the students in the culinary arts class that day was a fifteen-year-old sophomore (the student). During the class period, Conroy chatted with the student and one of her classmates about a television show. At some point, the student made a statement related to the use of condoms.[1]

---

[1] Conroy testified that the student and her classmate discussed condoms in a way that led Conroy to tell them that their conversation was inappropriate for the classroom. This is the apparent basis for the dissent's statement that Conroy's conversation with the student during the class "includ[ed] sexual topics." Dissenting Opinion ¶ 28.

[¶4]  After the class period ended but while school was still in session that day, Conroy sent the student a "friend request" via Facebook, and she accepted the request.  The two communicated via social media during the rest of the day and that evening.  The next day, May 23, they continued communicating and eventually met at a shopping area in Caribou.  Conroy drove the student home.  Later that evening, they exchanged text messages that were sexual in nature, and they also exchanged nude photographs.  The next day, May 24, Conroy picked the student up at her home and then took her to a movie.  After the movie, Conroy drove to a secluded area where he engaged the student in a sexual act, sexual contact, and sexual touching, as those terms are statutorily defined.  *See* 17-A M.R.S. § 251(1)(C), (D), (G) (2018).  Conroy was twenty-two years old at the time of these acts, and he and the student were not spouses.[2] He was a "rostered" substitute teacher with RSU 39, meaning that he could have served as a substitute teacher again without re-applying for the position.[3]

---

[2]  The trial court indicated that the fact that Conroy and the student were not spouses, which is an element of all of the crimes charged, *see* 17-A M.R.S. §§ 253(2)(F), 254(1)(A), 255-A(1)(K), 260(1)(J) (2018), was established based on the parties' stipulations "and other undisputed facts."  The stipulations did not address this fact.  Conroy, however, has never argued that the State failed to prove that the student was not his spouse, and there is ample evidence in the record supporting the court's finding.  To the extent that the court erroneously indicated that the fact was established by stipulation, therefore, that error was harmless.  *See* M.R.U. Crim. P. 52(a); *State v. Dobbins*, 2019 ME 116, ¶ 38, 215 A.3d 769.

[3]  The court stated both that "it was likely [that Conroy] would be called in to substitute teach again" and that it was only "speculation whether he would have been called in the future to substitute teach."

4

[¶5]  In July of 2017, in a seven-count indictment, the State charged Conroy with two counts of gross sexual assault (Counts 1-2), one count of unlawful sexual touching (Count 3), three counts of unlawful sexual contact (Counts 4-6), and one count of sexual abuse of a minor (Count 7).  After Conroy pleaded not guilty to all counts, the court held a jury-waived trial on August 29 and 30, 2018.  At the beginning of the trial, the State dismissed Counts 1, 5, and 6 with prejudice, leaving the following four charges for trial: gross sexual assault (Class C), 17-A M.R.S. § 253(2)(F), unlawful sexual contact (Class D), 17-A M.R.S. § 255-A(1)(K), sexual abuse of a minor (Class D), 17-A M.R.S. § 254(1)(A), and unlawful sexual touching (Class E), 17-A M.R.S. § 260(1)(J).[4]

[¶6]  The parties stipulated to a set of historical facts, which narrowed the factual and legal issues to be decided by the court.  The court then heard testimony from several witnesses, including the student, school administrators, and Conroy.

[¶7]  At trial, Conroy testified to a number of things that caused him to believe that the student was sixteen years old on May 24, 2017.  The trial court accepted that Conroy did hold such a belief, but concluded that the State had

---

[4] The charges dismissed with prejudice by the State alleged that the student had submitted to a sexual act as a result of compulsion (Count 1) and that she had not expressly or impliedly acquiesced to sexual contacts (Counts 5 and 6).

proved that Conroy's belief was a gross deviation from what a reasonable and prudent person would have believed in the same situation.

[¶8]  The court found Conroy guilty of all four charges and later sentenced Conroy, on the charge of gross sexual assault, to forty-two months in prison, with all but eighteen months suspended, and two years of probation.  Conroy was sentenced to six months in jail on the charge of unlawful sexual contact, three months in jail on the charge of unlawful sexual touching, and six months in jail on the charge of sexual abuse of a minor, all to be served concurrently with the sentence imposed on the gross sexual assault charge.

[¶9]  Conroy timely appeals from the resulting judgment of conviction. *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

A.    Sexual Abuse of a Minor

[¶10]  As mentioned above, in reaching its determination that Conroy was guilty of the sexual abuse of a minor charge, the court specifically found that, if Conroy believed that the student was sixteen years old or older, that belief was unreasonable.  Conroy argues that the trial court erred when it rejected his statutory defense by misallocating the burden of proof.  We review

6

the court's legal rulings de novo and its factual findings for clear error. *State v. Diecidue*, 2007 ME 137, ¶ 10, 931 A.2d 1077.

[¶11] Section 254(1)(A) provides that "[a] person is guilty of sexual abuse of a minor if . . . [t]he person engages in a sexual act with another person, not the actor's spouse, who is either 14 or 15 years of age and the actor is at least 5 years older than the other person." It is a defense to this crime "that the actor reasonably believed the other person is at least 16 years of age." 17-A M.R.S. § 254(2) (2018). The State bears the burden of disproving this defense beyond a reasonable doubt if the "evidence admitted at the trial . . . is sufficient to raise a reasonable doubt on the issue." 17-A M.R.S. § 101(1) (2018); *see, e.g.*, *State v. Lacourse*, 2017 ME 75, ¶ 11, 159 A.3d 847. We will not disturb a trial court's decision on a statutory defense as long as the court's findings are supported by competent evidence in the trial record, *State v. Herzog*, 2012 ME 73, ¶ 13, 44 A.3d 307, and "the court's judgment demonstrates that it has properly applied the law and has held the State and the defendant to the proper burdens of production and persuasion," *id.* ¶ 11.

[¶12] Here, as the court found, there was sufficient evidence to generate the defense that Conroy reasonably believed that the student was at least

sixteen years old. The State therefore had the burden of disproving this defense beyond a reasonable doubt. *See* 17-A M.R.S. § 101(1).

[¶13] Conroy asserts that the trial court misallocated the burden of proof onto him to prove that he reasonably believed the student was at least sixteen years old. A review of the court's decision as a whole, however, demonstrates that the court was simply explaining how and why it had determined that the State had met its burden of disproving Conroy's defense. We are persuaded that the court correctly applied the burden of proof by finding that the State had proved beyond a reasonable doubt that, even if Conroy actually believed the student was at least sixteen years old, his belief was unreasonable. That finding was supported by competent evidence admitted at trial. Accordingly, we affirm the conviction of sexual abuse of a minor.

B.    Unlawful Sexual Touching

[¶14]  Pursuant to 17-A M.R.S. § 260(1)(J),

[a] person is guilty of unlawful sexual touching if the actor intentionally subjects another person to any sexual touching and . . . [t]he other person, not the actor's spouse, is in fact less than 18 years of age and is a student enrolled in a private or public elementary, secondary or special education school, facility or institution and the actor, who is at least 21 years of age, *is a teacher, employee or other official* in the school district, school union, educational unit, school, facility or institution in which the student is enrolled.

8

(Emphasis added.) Here, the only contested issue with regard to this charge was whether the State proved beyond a reasonable doubt that Conroy was a "teacher, employee or other school official." We review the court's factual findings for clear error, and "[f]actual findings are clearly erroneous only when there is no competent evidence in the record to support them." *Diecidue*, 2007 ME 137, ¶ 10, 931 A.2d 1077.

[¶15] Conroy has argued, before the trial court and here, that the statute plainly requires proof that the accused possessed the relevant status *at the time that* he committed the sexual touching. The State disagrees. We need not address that issue of statutory construction because the court did find that on May 24, 2017, when Conroy committed the sexual touching against the student, he was in fact an employee of RSU 39, albeit in a limited capacity, and that finding is supported by competent evidence in the record. The court's finding was properly based on the evidence that, at the time that he engaged in sexual touching of the student, Conroy remained a rostered substitute teacher for RSU 39. In explaining its ruling, the court relied on the facts specific to Conroy's relationship with RSU 39. It noted that Conroy's relationship with RSU 39 had begun in 2014 and had, at one time, included both a full-time position and a position as a wrestling coach. Although it acknowledged that Conroy was "not

a regular employee," the court found that, "when [Conroy] left the school at the end of the day on May 22, 2017, he was still a rostered substitute teacher who had a meaningful relationship history with the school district." Given the specific findings made by the trial court, all of which are fully supported by the record, we affirm Conroy's conviction of unlawful sexual touching.

C.      Gross Sexual Assault and Unlawful Sexual Contact

[¶16]  With respect to the charges of gross sexual assault and unlawful sexual contact, Conroy again argues that the court's findings of guilt depended on a misinterpretation of the statutes setting forth the elements of those crimes. He contends that when the statutes are construed in accordance with their plain language, there was insufficient evidence for the court to find that the State had proved each element of the offenses beyond a reasonable doubt. We agree.

[¶17]  The formulation of gross sexual assault at issue here is as follows:

A person is guilty of gross sexual assault if that person engages in a sexual act with another person and . . . [t]he other person, not the actor's spouse, is a student enrolled in a private or public elementary, secondary or special education school, facility or institution and *the actor is a teacher, employee or other official having instructional, supervisory or disciplinary authority over the student.*

10

17-A M.R.S § 253(2)(F) (emphasis added).  The statute defining unlawful sexual contact contains identical language regarding the actor's status and authority:

> A person is guilty of unlawful sexual contact if the actor intentionally subjects another person to any sexual contact and . . . [t]he other person, not the actor's spouse, is a student enrolled in a private or public elementary, secondary or special education school, facility or institution and *the actor is a teacher, employee or other official having instructional, supervisory or disciplinary authority over the student.*

17-A M.R.S. § 255-A(1)(K) (emphasis added).

[¶18]  The only contested issue at trial with respect to these charges was whether Conroy was "a teacher, employee or other official having instructional, supervisory or disciplinary authority over the student."[5]   17-A M.R.S §§ 253(2)(F), 255-A(1)(K).  At trial, as he does on appeal, Conroy argued that this statutory language requires the State to prove that the actor possessed the requisite status and authority over the student *at the time that he engaged in the sexual act or the sexual contact.*  As we have explained, the court's finding as to Conroy's *status* at the time of the sexual act and sexual contact—that Conroy was an employee of RSU 39 on May 24, 2017—was not clearly erroneous.  Our

---

[5]  As an initial matter, we reject the State's construction of these statutes—also an unsuccessful venture before the trial court—which would uncouple "teacher" and "employee" from the modifier, "having instructional, supervisory or disciplinary authority over the student."  Otherwise, any accused who happened to be a teacher anywhere or, for that matter, *any* employee—regardless of the nature of employment or identity of the employer—would forever be subject to criminal liability for violating either or both of these statutes.

analysis is therefore focused on the *authority* element of these crimes, an element not present in the statute defining unlawful sexual touching. *See* 17-A M.R.S. § 260(1)(J). The narrow question presented here is whether the court erred when it interpreted the statutory language in a way that permitted it to find that Conroy was an employee "*having* instructional, supervisory or disciplinary authority over the student." 17-A M.R.S. §§ 253(2)(F), 255-A(1)(K) (emphasis added).

[¶19] The applicable principles of statutory construction are familiar. We review questions of statutory interpretation de novo. *State v. Hastey*, 2018 ME 147, ¶ 23, 196 A.3d 432. We look first to the plain language of the statute to determine its meaning if we can do so while avoiding absurd, illogical, or inconsistent results. *In re Child of Nicholas P.*, 2019 ME 152, ¶ 32, 218 A.3d 247; *Hastey*, 2018 ME 147, ¶ 23, 196 A.3d 432. We will not rewrite a statute where its meaning is plain. *See Fissmer v. Smith*, 2019 ME 130, ¶ 27, 214 A.3d 1054. Only if the meaning of a statute is not clear will we look beyond the words of the statute to examine other potential indicia of the Legislature's intent, such as the legislative history. *State v. Legassie*, 2017 ME 202, ¶ 13, 171 A.3d 589 ("We look to legislative history and other extraneous aids in interpretation of a

statute only when we have determined that the statute is ambiguous." (quotation marks omitted)).

[¶20] In response to Conroy's arguments, the trial court stated that it "agree[d that] some contemporaneous relationship [must] exist [between the requisite authority and] the sexual conduct," but also stated that there need not be "a direct level" of contemporaneity. The court concentrated its analysis on the school-based origin of the relationship between Conroy and the student, explaining its reasoning in the following way:

> It is exploitation of the teacher-student relationship, or extorting pressure, even if subtle, via that relationship, that these criminal statutes are aimed at preventing. And that exploitation, pressure or extortion could arise either *before the sexual act*, or after the sexual act, or some combination of both. But . . . , if there exists a teacher/employee-student relationship which is exploited in some manner resulting *contemporaneously* in a sexual act, the statute has been violated. In this respect, *it is the relationship before the sexual act* that is more critical, as that is when a perpetrator can groom and influence his victim. . . . If a teacher/employee-student relationship *existed*, which the teacher/employee was able to *contemporaneously advance* to a sexual act, the statute applies. . . . On these facts, . . . the substitute teacher/student relationship status that [Conroy] and [the student] had on May 22, 2017[,] was the *direct nexus to and contemporaneous with* the sexual act on May 24, 2017. It was that relationship that existed on May 22[] that provided [Conroy] the opportunity to quickly cultivate communications and dialogue with [the student], exploiting that relationship, leading to sex a mere two days later.

(Emphases added.)

[¶21] We agree with Conroy that the court's analysis reflects an incorrect reading of the applicable statutory language. By their plain language, the statutes, which employ the term "having" in the present tense, require nothing less than that, at the time of the sexual act or sexual contact, the actor have instructional, supervisory, or disciplinary authority over the student. 17-A M.R.S. §§ 253(2)(F), 255-A(1)(K). As the Legislature has chosen to define the criminal conduct, these specific crimes do not criminalize a combination of grooming that begins when the actor possessed the requisite authority and sexual conduct that occurs at some later time, absent proof that the requisite authority continued to exist.[6]

[¶22] Given the Legislature's choice of language, the status element of an employee-student or teacher-student relationship, by itself, cannot be taken to automatically satisfy the required authority element of these statutes. Again, the Legislature must have intended to require that the State prove more than an accused's "status" as a teacher or employee, because the Legislature specifically included language here that it did not include in other statutes, such as the one defining unlawful sexual touching. *See* 17-A M.R.S. §§ 255-A(1)(S),

---

[6] Although the trial court suggested that Conroy's sexual act was "contemporaneous" with his authority because the two existed *near* the same time, contemporaneous means "[l]iving, occurring, or existing *at the same time.*" *Contemporaneous*, Black's Law Dictionary (10th ed. 2014) (emphasis added).

14

260(1)(J) (2018); *Hickson v. Vescom Corp.*, 2014 ME 27, ¶ 15, 87 A.3d 704 ("All words in a statute are to be given meaning, and no words are to be treated as surplusage if they can be reasonably construed." (quotation marks omitted)). For these crimes, *in addition* to proving that the actor was a teacher, employee, or other official, the State is required to present evidence sufficient to prove that the actor was a person "having" authority over the student and that the specific nature of that authority was instructional, supervisory, or disciplinary.[7] 17-A M.R.S. §§ 253(2)(F), 255-A(1)(K).

[¶23] To accept the court's interpretation, we would need to rewrite the statute to either eliminate the authority element altogether or to change it to read "having *or having had* instructional, supervisory or disciplinary authority over the student." This we cannot do. *Cape Elizabeth Sch. Bd. v. Cape Elizabeth Teachers Ass'n*, 459 A.2d 166, 171 (Me. 1983) ("[I]t is not our role to rewrite the statute where its meaning is plain.").

[¶24] We do not accept the State's argument that interpreting these statutes according to their plain language will produce absurd, illogical, or inconsistent results. *See Hastey*, 2018 ME 147, ¶ 23, 196 A.3d 432. To the

---

[7] Contrary to the dissent's analysis, *see* Dissenting Opinion ¶ 39, the statutes plainly require one of these three specific types of authority. 17-A M.R.S. §§ 253(2)(F), 255-A(1)(K). Thus, a finding that Conroy merely had "authority" over the student according to a dictionary definition of that word would be necessary, but not sufficient, to satisfy that element of the statutes.

contrary, eliminating the required temporal overlap between actual authority and the sexual act or sexual contact would risk inconsistent results by making it impossible for citizens and the courts to fairly determine how long criminal liability would continue to attach once an authority role has ended.[8] Moreover, it is not the case that the State can prove these crimes only when the accused committed the sexual act or sexual contact in the classroom. The statutes require the State to present sufficient evidence to support a finding, beyond a reasonable doubt, that the accused had the requisite authority over the student when the sexual act or sexual contact occurred—wherever it occurred. That is what the State failed to do in this case.

[¶25] Finally, even if we were to conclude that the statutory language is ambiguous, permitting us to look to the legislative history for other indicia of the Legislature's intent, the result would be the same. Nothing in the legislative history suggests that the Legislature did not intend to require contemporaneity between the actor's authority over the student and the sexual act or sexual contact. *See, e.g.*, P.L. 1983, ch. 326, §§ 3, 7 (effective Sept. 23, 1983); L.D. 1113 (111th Legis. 1983); L.D. 1113, Statement of Fact (111th Legis. 1983). The

---

[8] "A criminal statute is unconstitutionally vague if it fails to give fair warning of its scope, in accordance with due process requirements, and it fails to give fair warning if a person of ordinary intelligence could not reasonably understand that it forbids the conduct for which he is criminally charged." *State v. Hills*, 574 A.2d 1357, 1358 (Me. 1990) (quotation marks omitted).

legislative history simply does not address the temporal relationships among the status, authority, and conduct elements of these crimes.

[¶26] As these two statutes are written, they required proof that Conroy possessed the requisite authority over the student at the time that he committed the sexual act and sexual contact. To the extent that the trial court found that he did have that authority, that finding is not supported by evidence presented at trial. Although we agree that, as the dissent points out, a substitute or full-time teacher *may* retain authority over a student after the class period or, for example, on a weekend or school vacation, *see* Dissenting Opinion ¶¶ 45-46, in this case, the State did not present any evidence—from the student's perspective, the school's perspective, or Conroy's perspective—that Conroy actually retained that authority after he finished substitute teaching on May 22, 2017. We therefore vacate the convictions of gross sexual assault and unlawful sexual contact.

D. Sentencing

[¶27] Because we vacate two of the four convictions in this case, resentencing is necessary to the extent that the sentences imposed were interrelated. *See Lacourse*, 2017 ME 75, ¶¶ 16-17, 159 A.3d 847; *State v. Carr*, 1997 ME 221, ¶¶ 15-16, 704 A.2d 353; *State v. Bunker*, 436 A.2d 413, 419

(Me. 1981). We therefore remand with instructions for the trial court to first determine whether the sentences imposed for sexual abuse of a minor and unlawful sexual touching were affected by the sentences imposed for gross sexual assault and unlawful sexual contact. *See Lacourse*, 2017 ME 75, ¶ 17, 159 A.3d 847. If so, the court shall resentence Conroy on the sexual abuse of a minor and unlawful sexual touching charges after a new sentencing hearing at which both Conroy and the State have the opportunity to be heard. *See id.* ¶ 17.

The entry is:

> Judgment vacated as to Counts 2 and 4, gross sexual assault and unlawful sexual contact. Judgment affirmed as to Counts 3 and 7, unlawful sexual touching and sexual abuse of a minor. Remanded for further proceedings consistent with this opinion.

---

ALEXANDER, J., with whom JABAR, J., joins, concurring in part and dissenting in part.

[¶28] The Court's opinion recognizes that at all times relevant to the actions in this case, Colby D. Conroy was under contract with Regional School Unit 39 (RSU 39) as a rostered substitute teacher, on call to provide substitute teacher instruction and supervision of students as needed. Conroy met his fifteen-year-old student/victim when he was assigned to teach her class.

During the class, he groomed the victim for further encounters, engaged her in conversation, including sexual topics, and learned how she could be contacted. Following class, while the victim was still in school, Conroy began communicating with the victim through social media. For the next forty-eight hours, Conroy and the victim engaged in nearly continual communication including social media messages, in-person meetings, exchange of nude pictures, and, ultimately, the meeting where Conroy sexually assaulted her.

[¶29] For these actions, Conroy was charged and, after trial, convicted of gross sexual assault (Class C), 17-A M.R.S. § 253(2)(F) (2018), sexual abuse of a minor (Class D), 17-A M.R.S. § 254(1)(A) (2018), unlawful sexual contact (Class D), 17-A M.R.S. § 255-A(1)(K) (2018), and unlawful sexual touching (Class E), 17-A M.R.S. § 260(1)(J) (2018). A review of the record demonstrates that the trial court (Aroostook County, *Stewart. J.*) had before it more than enough evidence to support its findings as to each charge.

[¶30] I concur with the Court that Conroy's convictions for sexual abuse of a minor and unlawful sexual touching should be affirmed. I respectfully dissent from the Court's vacating Conroy's convictions for gross sexual assault and unlawful sexual contact.

[¶31]  The Court concludes that the trial court erred in its interpretation of the relevant statutory language to support the convictions for gross sexual assault and unlawful sexual contact.  Title 17-A M.R.S. § 253(2)(F) provides that a person is guilty of gross sexual assault (Class C) if that person

> engages in a sexual act with another person and . . . [t]he other person, not the actor's spouse, is a student enrolled in a private or public elementary, secondary or special education school, facility or institution and the actor *is a teacher, employee or other official having instructional, supervisory or disciplinary authority over the student.*

(Emphasis added.)

[¶32]  Title 17-A M.R.S. § 255-A(1)(K) provides that a person is guilty of unlawful sexual contact (Class D) if that person

> intentionally subjects another person to any sexual contact and . . . [t]he other person, not the actor's spouse, is a student enrolled in a private or public elementary, secondary or special education school, facility or institution and the actor *is a teacher, employee or other official having instructional, supervisory or disciplinary authority over the student.*

(Emphasis added.)

[¶33]  Although the Court determines that Conroy was an employee within the meaning of sections 253(2)(F) and 255-A(1)(K), it decides that he lacked sufficient "instructional, supervisory or disciplinary authority" over the victim at the time of his sexual assault.  17-A M.R.S. §§ 253(2)(F), 255-A(1)(K).

[¶34]  We review questions of statutory interpretation de novo.  *See State v. Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125.  In statutory interpretation, we look "first to the plain meaning of the statutory language to give effect to the Legislature's intent."  *Teele v. West-Harper*, 2017 ME 196, ¶ 10, 170 A.3d 803; *see Arsenault v. Secretary of State*, 2006 ME 111, ¶ 11, 905 A.2d 285.  We will construe criminal statutes to avoid "absurd, illogical, or inconsistent results."  *Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125.

[¶35]  Based on the record, the trial court supportably found, and the Court agrees, that when the sexual assault occurred, Conroy was a "teacher, employee or other official" within the meaning of sections 253(2)(F) and 255-A(1)(K).  The trial court also supportably found that when the sexual assault occurred, Conroy had "instructional, supervisory or disciplinary authority" over the victim within the meaning of sections 253(2)(F) and 255-A(1)(K).

[¶36]  The Court concludes that, although Conroy remained a "teacher, employee, or other official," the State failed to prove that Conroy had "instructional, supervisory or disciplinary authority" over the victim when the school day ended on May 22.  17-A M.R.S. §§ 253(2)(F), 255-A(1)(K).  Such a narrow construction would permit a substitute teacher such as Conroy to be

convicted of the crimes at issue only if the sexual attacks occurred at school, during school hours. We should not say that the Legislature intended such an absurd result. *See Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125 (explaining that we construe criminal statutes to avoid "absurd, illogical, or inconsistent results").

[¶37] To determine whether Conroy had "instructional, supervisory or disciplinary authority" over the victim within the meaning of sections 253(2)(F) and 255-A(1)(K), we should be guided by the plain language of the statutes in light of the entire statutory scheme. *See In re Children of Mary J.*, 2019 ME 2, ¶ 12, 199 A.3d 231.

[¶38] In enacting section 253(2) and section 255-A(1)(C)-(X), the Legislature was concerned about sexual exploitation of vulnerable individuals, including students. The statutes defining the crimes of gross sexual assault and unlawful sexual contact contain numerous subsections, each of which is aimed at protecting a particular group of individuals who are susceptible to exploitation by persons in positions of authority.[9] *See* 17-A M.R.S. §§ 253(2)(C), (E)-(L), 255-A(1)(G)-(N), (Q)-(X) (2018). The legislative history of these statutes supports this conclusion. *See* L.D. 1113, Statement of Fact (111th Legis.

---

[9] These groups include, for example, (1) a person who "suffers from mental disability," 17-A M.R.S. §§ 253(2)(C), 255-A(1)(G), (H) (2018) and (2) a "dependent person . . . who is unable to perform self-care because of advanced age or physical or mental disease, disorder or defect." 17-A M.R.S. §§ 253(2)(L), 255-A(1)(W), (X) (2018).

1983) ("This bill recognizes the subtle pressures that may be put upon a student to ingratiate himself or herself with a teacher, employee or other school official and that the student's 'consent' in such cases may not be free and voluntary.").

[¶39] Respecting this legislative purpose, we should conclude that the phrase "having instructional, supervisory or disciplinary authority" connotes not only the power to discipline a student or tell a student what to do while in class, but more generally includes the "power to influence or command thought, opinion, or behavior." *Authority*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014). This interpretation comports with the Legislature's desire to protect certain groups of individuals, such as students, who are prone to subtle influence by authority figures that may result in sexual exploitation.

[¶40] We review the evidence "in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt" that Conroy possessed the requisite instructional, supervisory, or disciplinary authority over the victim to sustain convictions of gross sexual assault and unlawful sexual contact. *State v. Moores*, 2006 ME 139, ¶ 7, 910 A.2d 373.

[¶41] Conroy met, interacted with, and groomed the victim while he was the substitute teacher of the victim's class. He initiated online communications with the victim *during school hours that same school day*—a fact of particular significance because it shows that Conroy began to establish an exploitive relationship with the victim at a time when he was a teacher who had "instructional, supervisory or disciplinary authority" over the victim. 17-A M.R.S. §§ 253(2)(F), 255-A(1)(K).

[¶42] Over the next two days, Conroy engaged the victim in a continual pattern of online and in-person communications, including the exchange of sexual messages and nude photographs, culminating in his sexually assaulting the victim.

[¶43] The Court decides that, despite the plain language of the statutes and the intent of the Maine Legislature, Conroy must be acquitted of the gross sexual assault and unlawful sexual contact charges because the statutes, "which employ the term 'having' in the present tense, require nothing less than that, at the time of the sexual act or sexual contact, the actor have instructional, supervisory, or disciplinary authority over the student." Court's Opinion ¶ 21. The Court further observes, surprisingly, that "the statutes do not criminalize a combination of grooming that begins when the actor possessed the requisite

authority and sexual conduct that occurs at some later time, absent the State's proof that the requisite authority continued to exist." Court's Opinion ¶ 21.

[¶44]    The Court's construction would license part-time faculty—coaches, occasional teachers of specific subjects like art or music, or rostered substitute teachers like Conroy—to sexually engage students as long as they did it after school hours, off school grounds, or—for coaches—after the sport's season.  Then, for "sexual conduct that occurs at some later time" in the Court's narrow reading, Court's Opinion ¶ 21, offenders who targeted and groomed their victims during school activities would not be viewed as having "instructional, supervisory or disciplinary authority" over their victims.  17-A M.R.S. §§ 253(2)(F), 255-A(1)(K).

[¶45]  This construction ignores the reality that part-time faculty, by later recommendations, grade reports, comments on athletic performance or student behavior, and other actions can exercise instructional, supervisory, or disciplinary authority affecting a student's present and future long after class has ended.

[¶46]  In Conroy's case, his authority could have extended at least to May 24 and the later end of the grading period for the victim's class.  The trial court properly found that, two days after their meeting in class, and at the time

of the sexual assault, Conroy had "instructional, supervisory or disciplinary authority" over the victim. 17-A M.R.S. §§ 253(2)(F), 255-A(1)(K). I would affirm the convictions for gross sexual assault and unlawful sexual contact.

---

Matthew A. Hunter, Esq. (orally), Caribou, for appellant Colby D. Conroy

Todd R. Collins, District Attorney (orally), and John M. Pluto, Asst. Dist. Atty., Prosecutorial District No. 8, Caribou, for appellee State of Maine

Aroostook County Unified Criminal Docket docket number CR-2017-121
FOR CLERK REFERENCE ONLY